**GRANITE CITY STEEL COMPANY,**
Petitioner,

v.

**ENVIRONMENTAL PROTECTION
AGENCY, Respondent.**

**No. 73-1846.**

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1974.

Decided Aug. 22, 1974.

Randall Robertson, Granite City, Ill.,
Leah S. Hamilton, Jenner & Block, Chicago, Ill., for petitioner.

Wallace H. Johnson, Asst. Atty. Gen., Peter R. Steenland, Atty., U. S. Dept. of Justice, Washington, D. C., for respondent.

Before CLARK, Associate Justice,* and CUMMINGS and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

This matter arises on Granite City Steel Company's ("the Company's") petition to review a regulation promulgated by the United States Environmental Protection Agency ("EPA") on August 23, 1973. The Company has asked us to suspend and set aside the regulation.

The regulation in question promulgates an interim compliance schedule for coke-oven pushing and quenching operations in Illinois. It provides as follows (40 CFR § 52.730(b)(2)(ii), 38 F.R. 22742):

> "The owner or operator of any stationary source subject to Illinois Air Pollution Control Regulation Rule 203(d)(6)(B)(ii)(bb) shall take the following action with respect to the source no later than the date specified.

> "(a) September 30, 1973—Advertise for bids for purchase and construction or for modification of equipment sufficient to control particulate emissions from the source.

> "(b) November 15, 1973—Award contracts for emissions control systems or process modification, or issue orders for the purchase of component parts to accomplish emission control or process modification.

> "(c) March 31, 1974—Initiate onsite construction or installation of emission control system.

> "(d) October 31, 1974—Complete onsite construction or installation of emission control system.

> "(e) December 31, 1974—Achieve final compliance with Illinois Air Pol-

---

* Associate Justice Tom C. Clark (Retired) of the Supreme Court of the United States is sitting by designation.

lution Control Regulations Rule 203 (d)(6)(B)(ii)(bb)."

The Illinois rule referred to in the final paragraph of the federal regulation provides:

"On and after December 31, 1974, all coke-oven facilities shall be equipped with enclosed pushing and quenching systems with particulate collection equipment, or shall employ alternative methods of comparable effectiveness in reducing emission during pushing and quenching."

This rule was part of the State of Illinois Air Pollution Implementation Plan. The federal regulation was one of several compliance schedules promulgated by EPA in furtherance of the State plan. It required companies operating coke ovens in Illinois to meet the four interim achievement dates established therein in order to assure progress towards full compliance with the December 31, 1974, Illinois deadline. The Company informs us that only four integrated steel companies are affected by this regulation.

In the Company's coke-oven facilities in Granite City, Illinois, coal is converted into coke to manufacture iron and steel. After the coal becomes incandescent in the Company's ovens, a large pusher ram enters the oven through one door and forces the incandescent coke out the other door into a hot coke car, also known as a quenching car, which carries the coke to a quenching tower. There the coke is deluged with water before the next step of the process. A fine coke breeze is emitted from the pushing and quenching of the coke. The Illinois rule and the EPA compliance schedule concern the pushing and quenching operations.

Pursuant to Section 110(a)(2) of the Clean Air Act (42 U.S.C. § 1857c–5(a)(2)), the EPA Administrator approved the above-quoted Illinois rule as submitted by the Illinois Pollution Control Board. 40 CFR § 52.722 (37 F.R. 10862 (May 31, 1972)). However, Illinois failed to establish "increment of progress" dates for meeting the December 31, 1974, deadline in its rule. Such increment of progress or milestone dates were required by 40 CFR § 51.15(c). Consequently, on June 20, 1973, the EPA Administrator proposed increment of progress dates. 38 F.R. 16171, 16175–16176. After Illinois hearings, the Administrator modified the proposal and published the regulation involved here on August 23, 1973 (38 F.R. 22736, 22742), precipitating the Company's petition for review.

The Company did not petition this Court to review the December 31, 1974, attainment date in the Illinois rule when it was approved by the EPA on May 31, 1972. Such a petition had to be filed within 30 days from that approval under Section 307(b)(1) of the Clean Air Act (42 U.S.C. § 1857h–5(b)(1)). Although the Company formally disclaims any attack on the December 31, 1974, date, it is now attacking the increment of progress dates in the federal rule on the ground that the attainment date itself is unreasonable. Such a collateral attack would evade the time period for reviewing the attainment date and cannot be countenanced. Cf. Getty Oil Co. v. Ruckelshaus, 467 F.2d 349, 358–359 (3d Cir. 1972). The time limit is not arbitrary but is designed to get issues resolved promptly and thereby prevent delay in cleaning the air.

The increment of progress dates must be considered within the constraint of the December 31, 1974, Illinois compliance date. As noted, the EPA was required to establish increments of progress when not established by the State. Here the Administrator finally had a sixteen-month period available within which to maneuver, namely, between the August 23, 1973, promulgation date and the December 31, 1974, Illinois compliance date. The parties agree that the dates he selected are not to be set aside unless arbitrary or capricious.

Before promulgating the regulation under attack, the Administrator considered a technical support document and guidelines derived from a preliminary study first submitted to the EPA by PEDCo-Environmental Specialists, Inc. in April 1973. The pertinent PEDCo schedules in the record (Appendix 43–44) were based upon one system in operation (the Ford system) and one system of a different kind under construction (the Interlake system). They were formulated earlier than differing schedules contained in PEDCo's July 1973 final report and are described in the record as rough approximations. These rough approximations of PEDCo indicated that 53 weeks were necessary to achieve compliance if the Ford system were used, and 79 weeks if the Interlake system were used. EPA allowed 75 weeks from the time its regulation was proposed, and 66 weeks from the time it was promulgated. The EPA also considered the April 1973 PEDCo report's discussion of existing technology.

As noted, the December 31, 1974, compliance date is not really in issue, but rather the increment of progress dates. There is no explicable relationship between the time PEDCo thought necessary for each step and the time allowed by the regulation. However, the time steps allowed by EPA, computed from the date it proposed its regulation, are more generous than the time steps allotted by PEDCo to the Ford system. Apart from this and EPA's consideration of the then existing technology, the only support in the record for the increment of progress dates is that they are reasonable on their face given the fixed compliance date. The Company has not suggested otherwise; it has not said, e. g., that it needed two additional weeks to let contracts and two fewer weeks for actual construction. Rather, the Company's argument is that all the dates are too early. As against that attack, the dates are clearly reasonable and must be upheld, for they cannot all be delayed without violating the previously established December 31, 1974, compliance date.

The Company argues that this is a harsh and unreasonable result, and that no schedule should have been promulgated at all if the December 31, 1974, date is impossible to meet. It is a sufficient answer that a milestone schedule was required by 40 CFR § 51.15(c) and that the Company deliberately bypassed a chance to litigate the reasonableness of the endpoint. In these circumstances any harshness is irrelevant, but an affidavit filed by the EPA in response to the Company's motion for stay pending appeal shows that adequate technology was available in time. The Great Lakes Carbon Company of St. Louis, Missouri, installed a system in seven months and has had it in operation since April 1972. A West German coke plant was operating a system on two batteries of ovens before August 1973; it installed its third system in six months. Although the affidavit is ambiguous, it appears that these are actual construction times and do not include planning and contract awarding. Two other companies were constructing such systems at three other plants with somewhat longer anticipated construction times. The affidavit concluded as follows:

"If a company had begun preliminary design work in the summer of 1973, the experience of the companies referred to herein indicates that purchase and installation of control technology for pushing operations at coke oven facilities could be completed, in most instances, by the end of 1974."

This affidavit was not in the record of the rule-making proceeding. The April PEDCo report refers only to the Ford and Interlake systems, and they are referred to anonymously; they were identified for the first time in this Court. Ordinarily we would be reluc-

tant to approve a regulation where so much of the information in support of the proposed rule was kept secret until after the hearing required by § 110(c), 42 U.S.C. § 1857c–5(c). The purpose of the hearing is largely subverted if interested persons cannot respond to the agency's reasons for the proposed regulation. See Portland Cement Assn. v. Ruckelshaus, 158 U.S.App.D.C. 308, 486 F.2d 375, 393 (1973). Here the Company's attack is in essence an attack on the compliance date. Therefore, the increment of progress dates, whose unreasonableness has not been satisfactorily shown by the Company, need not be set aside.

Proper forms of relief are potentially available to the Company. If it contends that the December 31, 1974, date is unreasonable solely because of grounds arising more than thirty days after it was promulgated, it may file a petition for review in this Court under Section 307(b)(1), 42 U.S.C. § 1857h–5(b)(1). If it can show that there was never an opportunity for judicial review under that Section, it can seek judicial review in an enforcement proceeding brought by the Administrator. § 307(b)(2), 42 U.S.C. § 1857h–5(b)(2). It may seek to qualify for an extension of time under several Sections of the Act. See § 110(e), 42 U.S.C. § 1857c–5(e); § 110(f), 42 U.S.C. § 1857c–5(f); § 112(c), 42 U.S.C. § 1857c–7(c); § 113(a)(4), 42 U.S.C. § 1857c–8(a)(4). EPA represented at oral argument that any such applications will be denied because the Company has made no effort to comply, and that an enforcement proceeding is inevitable. Even so, that does not accord the Company a present right to indirect review of the final compliance date here. Given that date, the interim dates are reasonable. For any other relief, the Company is in the wrong forum at the wrong time.

The petition for review is dismissed.