515 F.2d 654
 38 A.L.R.Fed. 558, 169 U.S.App.D.C. 195,
5 Envtl. L. Rep. 20,481
 OLJATO CHAPTER OF the NAVAJO TRIBE et al., Appellants,
v.
Russell E. TRAIN, Administrator of the Environmental
Protection Agency.
RED MESA CHAPTER OF the NAVAJO TRIBE, Oljato Chapter of
Jicarilla Apache Tribe of Indians, Committee to Save Black
Mesa, Inc., Paul Goodman, Mary Gillis, Jackson Gillis, Della
Marie G. Black, and Begay Bitsinnie, Petitioners,
v.
Russell E. TRAIN, Administrator of the Environmental
Protection Agency, Respondent.
 Nos. 74-1525 and 74-1587.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 28, 1975.
Decided July 7, 1975.
 
 Joseph J. Brecher, Boulder, Colo., with whom John D. Ross, III, was on the brief, for appellants-petitioners.
 Robert L. Klarquist, Atty., Dept. of Justice, with whom Wallace H. Johnson, Asst. Atty. Gen., Carl Strass and Lloyd S. Guerci, Attys., Dept. of Justice, and Jeffrey O. Cerar, Atty., Environmental Protection Agency, were on the brief, for appellee-respondent.
 Before RIVES,* Senior Circuit Judge, and WRIGHT and McGOWAN, Circuit Judges.
 Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.
 J. SKELLY WRIGHT, Circuit Judge:
 
 
 1
 Petitioners-appellants'[1] (hereinafter petitioners) challenge to the refusal of the Administrator of the Environmental Protection Agency (EPA) to revise his previously promulgated standards of performance for new coal-fired power plants raises difficult procedural problems concerning the proper forum in which such a challenge may be brought. We conclude that a challenge to the Administrator's refusal to revise a standard of performance is in effect a challenge to the standard itself and so can be brought only in this court under Section 307(b)(1) of the Clean Air Act (the Act), 42 U.S.C.A. § 1857h-5(b)(1) (1975 pocket part). However, because petitioners have not complied with certain preliminary procedures which we conclude are essential to our exercise of jurisdiction under the Act, we dismiss the petition for review, without prejudice to its refiling when those preliminary procedures are met.
 
 
 2
 * Section 111 of the Clean Air Act, 42 U.S.C. § 1857c-6 (1970), orders the Administrator of EPA to promulgate "standards of performance" for new stationary sources of air pollution. A standard of performance is
 
 
 3
 a standard for emissions of air pollutants which reflects the degree of emission limitation achievable through the application of the best system of emission reduction which (taking into account the cost of achieving such reduction) the Administrator determines has been adequately demonstrated.
 
 
 4
 Id. § 1857c-6(a)(1). On August 17, 1971 the Administrator proposed standards for new coal-fired electric generating stations, 36 Fed.Reg. 15704, 15706. After consideration of comments, the proposed standards were made final on December 23, 1971. Id. at 24876. See 40 C.F.R. Part 60 (1974). The standard for sulfur oxide emissions, which petitioners seek to have revised, was set at 1.2 pounds of sulfur oxides per million British Thermal Units of plant capacity.
 
 
 5
 For plants burning the high sulfur coal prevalent in the East, this standard could be achieved only by cleansing the sulfur by-products from the gases emitted from the stack.[2] This process is known as fuel gas desulfurization (FGD) or "scrubbing," and is used to clean emissions from existing as well as new sources. Plants burning the low sulfur coal prevalent in the West could achieve the 1.2 pound standard without using any control technology at all. This standard was adopted to encourage identification and use of clean fuels, which are both "a more environmentally acceptable and more efficient means of reducing sulfur dioxide air pollution," and because there was insufficient scrubber capacity "to meet demands relating to compliance with ambient air quality standards (for existing sources) and with new source performance standards." Respondent's Supplemental Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 2, Appendix (App.) at 68. When promulgated, the standard for new coal-fired generators was challenged by those who claimed it was too strict. With one exception not here pertinent, the standard was approved by this court in Essex Chemical Corp. v. Ruckelshaus, 158 U.S.App.D.C. 360, 486 F.2d 427 (1973). See also Portland Cement Ass'n v. Ruckelshaus, 158 U.S.App.D.C. 308, 486 F.2d 375 (1973).
 
 
 6
 Petitioners did not join in the timely appeal from the Administrator's promulgation of new source standards for coal-fired generators. Cf. Nader v. Nuclear Regulatory Com'n, 168 U.S.App.D.C. ---, ---, 513 F.2d 1045, 1054 (decided May 30, 1975). Instead, on March 20, 1973, well over a year after the final standards of performance were promulgated, counsel for petitioners wrote a letter to the Administrator stating that his clients objected to application of the standards to new coal-fired electric generating plants being planned in the Four Corners area of the Southwest. The planned plants would use low sulfur coal and therefore would employ no "scrubbing" devices. The letter requested the Administrator announce a proposed rule-making within 30 days for the purpose of revising EPA's standard of performance to require removal of 90 per cent of sulfur dioxide emissions in all new plants regardless of the quantity of those emissions. App. 6-8. On May 7, 1973 the Director of EPA's Office of Air Quality Planning and Standards responded to the letter, advising petitioners that EPA was not planning to revise the new source performance standards for coal-fired power plants and the reasons therefor. App. 9-12.
 
 
 7
 On June 22, 1973 petitioners filed suit in the District Court. Asserting District Court jurisdiction under Section 304 of the Clean Air Act, 42 U.S.C. § 1857h-2 (1970), and Section 10 of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706 (1970), they sought to have the court order the Administrator to propose new source standards of performance that would implement the 90 per cent control they desired. App. 1-5. The District Court dismissed the suit for lack of jurisdiction on January 31, 1974, ruling that a challenge to a standard of performance lay only in the Court of Appeals under Section 307(b) (1) of the Clean Air Act, 42 U.S.C.A. § 1857h-5(b)(1). App. 83-84. Petitioners have both appealed the dismissal of their suit for injunctive relief and, taking the suggestion of the District Court, petitioned this court directly for review of the Administrator's standard of performance. Accordingly, we must determine the proper forum for this challenge.
 
 II
 
 8
 The Clean Air Act provides two means of review of EPA action. There is a typical review section, Section 307, that allows appeals to the Courts of Appeals to this court alone in the case of national standards and there is a novel provision in Section 304 for "citizen suits" to be brought against the Administrator in District Court. Section 307,[3] which is exclusive in its terms, directs that petitions "for review of action of the Administrator in promulgating * * * any standard of performance under section (111)" may be filed only in this court and only "within 30 days from the date of such promulgation * * *." 42 U.S.C.A. § 1857h-5(b)(1). An appeal is allowed after that time "if such petition is based solely on grounds arising after such 30th day." Id. An action under Section 304,[4] on the other hand, may be brought at any time, so long as the Administrator is given 60 days notice, whenever "there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." Id. § 1857h-2(a)(2). The other source of jurisdiction to review EPA action pertinent to this case is Section 10 of the APA, 5 U.S.C. §§ 701-706, which this court has found to be an independent source of jurisdiction for District Court review of much agency action regardless of the amount in controversy.[5] Scanwell Laboratories, Inc. v. Shaffer, 137 U.S.App.D.C. 371, 424 F.2d 859 (1970). See Pickus v. United States Board of Parole, 165 U.S.App.D.C. ---, --- & n. 4, 507 F.2d 1107, 1109 & n. 4 (1974) (setting out the cases in this circuit and discussing the split among the circuits).
 
 
 9
 In the District Court petitioners argued that the Administrator's refusal to revise the standard of performance for new coal-fired electric generating plants constituted a failure to perform a nondiscretionary duty, thereby conferring District Court jurisdiction under the citizen suit provisions of Section 304. First Amended Complaint for Injunctive Relief at 4, App. at 4. Additionally, they claimed that their letter of March 20, 1973 constituted a petition for amendment of a rule under 5 U.S.C. § 553(e) (1970), thereby making the EPA refusal to act reviewable under Section 10 of the APA. Id. While urging the validity of these bases of jurisdiction in their appeal in No. 74-1525, petitioners also argue, in their petition for review in No. 74-1587, that they seek review of the standard of performance under Section 307 solely on the basis of information arising after the original 30-day filing period. Brief for petitioners at 48-51. At oral argument counsel for petitioners made clear that it mattered little to him where review could be had, only that it could be had at all. Indeed, throughout this case petitioners rely heavily on the general presumption of reviewability of administrative action, see Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), rather than on one provision over another. On the other hand, EPA argues, and we agree, that petitioners' challenge is to the "action of the Administrator in promulgating" the standard of performance, Section 307(b)(1), 42 U.S.C.A. § 1857h-5(b)(1). Since Section 307 is exclusive, this challenge is cognizable only in this court on a direct petition for review.
 
 
 10
 We first address the appeal in No. 74-1525, where petitioners must show why District Court jurisdiction under Section 304 or the APA is not precluded by the exclusive language of Section 307. Although petitioners argue that the standard of performance here at issue "was unlawful when promulgated," brief for petitioners at 6, or, alternatively, has been rendered obsolete by "fundamental changes in the state-of-the-art of FGD technology and the nation's energy situation," id., they seek to escape the obvious conclusion that they are challenging the validity of the standard itself (and thereby bringing a Section 307 appeal) by arguing that their challenge is not to the standard but to the refusal of the Administrator to revise that standard; such a challenge, it is asserted, is outside the ambit of Section 307. The District Court rejected this attempt to avoid Section 307 as "ill-conceived." Order dismissing complaint, App. at 83. We agree.
 
 
 11
 Petitioners support their suggested escape route from Section 307 by pointing to the distinction between judicial review of an original rule and review of a subsequent refusal to modify or revise that rule. See Functional Music, Inc. v. FCC, 107 U.S.App.D.C. 34, 37, 274 F.2d 543, 546 (1958), cert. denied, 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 81 (1959); Cappadora v. Celebrezze, 2 Cir., 356 F.2d 1, 5 (1966); Aquavella v. Richardson, 2 Cir., 437 F.2d 397, 401-402 (1971).[6] Section 307, they suggest, only governs review of the original rule, whether within the 30-day review period or based on new information, as distinguished from review of a refusal to revise the rule. While we have no difficulty in making the suggested distinction, we conclude that Congress intended all review related to the continuing validity of standards of performance to be included within the exclusive scope of Section 307; that this action is premised upon the Administrator's refusal to revise the standard is of no jurisdictional import.
 
 
 12
 Section 307 originated in the Senate version of the Clean Air Act. The Senate committee described its purpose in allowing for subsequent review based on new information as follows:
 
 
 13
 The committee recognizes that it would not be in the public interest to measure for all time the adequacy of a promulgation of any standard or regulation by the information available at the time of such promulgation. In the area of protection of public health and environmental quality, it is clear that new information will be developed and that such information may dictate a revision or modification of any promulgated standard or regulation established under the act. The judicial review section, therefore, provides that any person may challenge any promulgated implementation plan after the date of promulgation whenever it is alleged that significant new information has become available.
 
 
 14
 S.Rep.No.91-1196, 91st Cong., 2d Sess., 41-42 (1970) (emphasis added). While the conferees tightened up the grounds for such an appeal, rejecting the Senate's suggested language, "whenever it is alleged that significant new information has become available," S. 4358, 91st Cong., 2d Sess., § 308(a) (1970), for the present formulation, "solely on grounds arising after such 30th day," the provision was adopted without further congressional comment.
 
 
 15
 We think the Senate Report makes clear that there can be no difference, so far as Section 307 is concerned, between an appeal based directly on new information and an appeal based on the Administrator's refusal to revise the standard when presented with that information. Congress sought in Section 307 to provide a legal mechanism and an exclusive one to assure that standards were revised whenever necessary. Revising the standard is not, however, a task for the courts; a successful new information appeal would only secure an order to the Administrator to revise the standard himself. Since a revision by the Administrator is the ultimate goal of a new information appeal, it makes little sense to suggest that this court is stripped of its Section 307 jurisdiction whenever a party attempts to avoid litigation by first asking the Administrator voluntarily to make the same revision a successful Section 307 petition would require. Yet this is essentially what petitioners suggest: Court of Appeals jurisdiction under Section 307 for a direct challenge to the continuing validity of a standard of performance if the Administrator is not first given the opportunity to act; District Court jurisdiction under Section 304 if the Administrator is given the opportunity to act and refuses.
 
 
 16
 This is not what Congress intended. The two suggested forms of action are substantively identical, and it is well settled that bifurcated jurisdiction between District Court and Court of Appeals over identical litigation is not favored.[7] See Foti v. I&NS, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963). See also L. Jaffe, Judicial Control of Administrative Action 422 (1965). Moreover, Congress sought to assure "even and consistent national application * * *," S.Rep.No.91-1196, supra, at 41, of national standards of performance by granting this court sole jurisdiction to review such standards. Petitioners' theory would allow litigants readily to circumvent this jurisdiction by premising their new information challenges upon requests to the Administrator for action; upon the Administrator's refusal to act, litigation could proceed in District Courts around the country. This would defeat the intent of Congress. See Anaconda Co. v. Ruckelshaus, 10 Cir., 482 F.2d 1301, 1304-1305 (1973). Lastly, a Section 304 action in the District Court would not be limited to claims based upon new information, but could be used as a base for a general out-of-time challenge to the standard as promulgated. Indeed, such claims were raised by petitioners in this action. Thus petitioners' theory would also allow ready circumvention of the time limits for direct challenges and the substantive limits for new information challenges. This, too, conflicts with the intent of Congress. See Getty Oil Co. (Eastern Operations) v. Ruckelshaus, 3 Cir., 467 F.2d 349, 358-359 (1972), cert. denied, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973); Granite City Steel Co. v. EPA, 7 Cir., 501 F.2d 925, 926 (1974); cf. Nader v. Nuclear Regulatory Com'n, supra, 168 U.S.App.D.C. at ---, 513 F.2d at 1054.
 
 
 17
 For all the above reasons, we hold that, whether or not the action is premised on a prior refusal of the Administrator to act, any litigation seeking revision of a national standard of performance must be brought as a direct appeal to this court under Section 307. If the action comes more than 30 days after promulgation of the standard, it must be based on new information, or not be brought at all.[8] See note 6 supra. Cf. Getty Oil Co. (Eastern Operations) v. Ruckelshaus, supra. Indeed, we go beyond holding that a direct appeal based on new information is identical so far as Section 307 is concerned to one based on the Administrator's rejection of a request for revision. As we shall explain in Part III, and as the Eighth Circuit has already held, Union Electric Co. v. EPA, 515 F.2d 206, 220 (No. 74-1614, decided March 27, 1975), a preliminary presentment to the Administrator of the new information allegedly justifying revision of a standard is required before we will exercise jurisdiction under Section 307. Thus petitioners' request for new rule-making on the new coal-fired generator standard of performance, far from justifying jurisdiction under Section 304, was actually a prerequisite to Section 307 jurisdiction.
 
 
 18
 While our reading of this court's exclusive Section 307 jurisdiction in this case necessarily ousts District Court jurisdiction, Natural Resources Defense Council, Inc. v. EPA, 168 U.S.App.D.C. ---, ---, 512 F.2d 1351, 1355 (No. 72-2233, decided May 19, 1975); Anaconda Co. v. Ruckelshaus, supra, 482 F.2d at 1304, we shall address petitioners' claims of jurisdiction in the District Court under Section 304 and the APA to show their lack of merit. The citizen suit provision of Section 304 was designed to "provide citizen participation in the enforcement of standards and regulations established under this Act." S.Rep.No.91-1196, supra, at 36. The legislative history of the provision and the changes it worked on existing law are described in detail in Natural Resources Defense Council, Inc. v. Train, 167 U.S.App.D.C. ---, --- - ---, 510 F.2d 692, 699-703 (1974); there is no need for repetition here. The scope of Section 304 was not designed to mesh neatly with that of Section 307, but if there are cases where colorable claims of jurisdiction may be made under either section, this case is not such an instance.[9] Petitioners argue that the Administrator has a duty to revise the standards of performance of coal-fired generators from time to time, citing Section 111(b)(1)(B), 42 U.S.C. § 1857c-6(b)(1)(B) (Supp. III 1973).[10] The evidence they present, petitioners argue, makes revision necessary now, so the Administrator's failure to revise constitutes a failure to perform a nondiscretionary duty. Thus their claim is cognizable in the District Court.
 
 
 19
 However verbally appealing such an argument may be, it does not survive scrutiny. The decision to revise a standard of performance is in fact discretionary with the Administrator. The language of Section 111 carefully distinguishes between discretionary and mandatory duties:
 
 
 20
 Within 120 days after the inclusion of a category of stationary sources in a list under subparagraph (a), the Administrator shall publish proposed regulations, establishing Federal standards of performance for new sources within such category. The Administrator shall afford interested persons an opportunity for written comment on such proposed regulations. After considering such comments, he shall promulgate, within 90 days after such publications, such standards with such modifications as he deems appropriate. The Administrator may, from time to time, revise such standards following the procedure required by this subsection for promulgation of such standards. * * *
 
 
 21
 Section 111(b)(1)(B), 42 U.S.C. § 1857c-6(b)(1)(B) (emphasis added). The rule of construction is settled: "(W)hen the same Rule uses both 'may' and 'shall', the normal inference is that each is used in its usual sense the one act being permissive, the other mandatory." Anderson v. Yungkau, 329 U.S. 482, 485, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947). See also Farmers & Merchants Bank v. Federal Reserve Bank, 262 U.S. 649, 662, 43 S.Ct. 651, 67 L.Ed. 1157 (1923); United States v. Thoman, 156 U.S. 353, 360, 15 S.Ct. 378, 39 L.Ed. 450 (1895); Luck v. United States, 121 U.S.App.D.C. 151, 155-156, 348 F.2d 763, 767-768 (1965).
 
 
 22
 Petitioners cite language from the legislative history to show that Congress intended to "direct" the Administrator to revise the standards of performance from time to time. See S.Rep.No.91-1196, supra, at 17. That may be so, but such a direction does not mean that the Administrator is without discretion in determining when action is necessary. We have no doubt that it would be an abuse of discretion for the Administrator to fail to revise a standard of performance when the evidence supporting revision became sufficiently compelling. However, such abuses are not without judicial remedy. It is precisely the purpose of the new information provision of Section 307 to allow for review of this sort of abuse of discretion. Natural Resources Defense Council, Inc. v. EPA, supra, 168 U.S.App.D.C. at ---, 512 F.2d at 1355.
 
 
 23
 The thrust of petitioners' argument, however, is that even if the decision is within the Administrator's discretion an abuse of that discretion here the allegedly improper refusal to revise a standard of performance constitutes a failure to perform a nondiscretionary act, thereby creating jurisdiction under Section 304. While the distinction between an abuse of discretion and a failure to perform a nondiscretionary act "tends to be abstract and conceptual," Natural Resources Defense Council, Inc. v. Train,supra, 167 U.S.App.D.C. at ---, 510 F.2d at 714, there is undoubtedly a distinction,[11] and it is on that distinction that Congress intended to base Section 304 jurisdiction. As originally proposed by the Senate, Section 304 would have allowed for citizen suits against the Administrator "where there is alleged a failure of the (Administrator) to exercise * * * any duty established by this Act." S. 4358, 91st Cong., 2d Sess., § 304(a)(1)(B) (1970) (emphasis added). The conferees changed this language to the present version, which includes not "any duty" but "any act or duty * * * which is not discretionary * * *." Section 304(a)(2), 42 U.S.C. § 1857h-2(a)(2). The Conference Report had this to say about the change:
 
 
 24
 The conference substitute retains provisions for citizen suits with certain limitations. Suits against the Administrator are limited to alleged failure to perform mandatory functions to be performed by him. * * *
 
 
 25
 Conference Report to accompany H.R. 17255, 91st Cong., 2d Sess., 56 (1970), U.S.Code Cong. & Admin.News, p. 5388 (emphasis added). Plainly the change was meant to have significance: to limit suits against the Administrator to a chosen few. See Natural Resources Defense Council, Inc. v. EPA, supra, 168 U.S.App.D.C. at ---, 512 F.2d at 1355.[12] If an abuse of discretion were held to be a failure to perform a nondiscretionary act, failure to perform any duty, discretionary or nondiscretionary, under the Act would be drawn within the scope of Section 304.[13] Since this is exactly the result Congress intentionally deleted from the Act, petitioners' interpretation is contrary to the clearly expressed intent of Congress and must be rejected.[14]
 
 
 26
 Petitioners' alternate theory of District Court jurisdiction is based on Section 10 of the APA, 5 U.S.C. §§ 701-706. This court and others have held that Section 10 is an independent source of District Court jurisdiction to review the actions, or inactions, of administrative agencies. See Scanwell Laboratories, Inc. v. Shaffer, supra ; Pickus v. United States Board of Parole, supra. The Administrator argued before the District Court that despite the precedent in this circuit the APA was not an independent source of jurisdiction. See Supplemental Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss at 2, App. at 15. He does not repeat that argument here, and we decline to retreat from the well established rule in this circuit.
 
 
 27
 As a jurisdictional source, however, the APA is of the "gap-filling" variety. It does not give a blanket grant of jurisdiction, but merely provides it where necessary. The APA declares:Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. * * *[15]
 
 
 28
 Section 10(c), 5 U.S.C. § 704 (emphasis added). Thus before the APA becomes an independent basis of jurisdiction to review the Administrator's failure to revise the standard of performance for coal-fired generators, there must be "no other adequate remedy in a court * * *." Since we find that Section 307 provides an adequate remedy, although exclusively in this court, APA jurisdiction remains dormant.[16] See Utah International, Inc. v. EPA, 10 Cir., 478 F.2d 126 (1973); Amerada Petroleum Corp. v. FPC, 10 Cir., 231 F.2d 461 (1956).
 
 
 29
 Since a challenge to a standard of performance, whether labeled a direct challenge or a challenge to the Administrator's refusal to revise the standard, is a petition for review "of action of the Administrator in promulgating * * * (a) standard of performance,"[17] Section 307(b)(1), 42 U.S.C.A. § 1857h-5(b)(1), it is cognizable only in this court. There is no jurisdiction in the District Court to consider this action under either Section 304 or the APA. Accordingly, we affirm the District Court's dismissal of petitioners' complaint, and we now turn to their petition for review.
 
 III
 
 30
 Petitioners argue that we should grant their petition for review because it is based on grounds arising solely after the 30th day following promulgation of the standard. The Administrator argues that we should dismiss the petition since the challenge is not based solely on new information. If we should grant the petition, he argues that his refusal to revise the standard of performance was not arbitrary or capricious and thus should be sustained on the merits. Unfortunately, there is no record in this case against which we can judge the merits of these various contentions. As a court of record, we find ourselves in a somewhat awkward position. Congress plainly designed Section 307 to allow a direct appeal to this court when new information casts doubt upon the validity of a standard of performance, but we are not in a position to take evidence so as to evaluate the merits of such a claim. Appellate courts have in the past denied the right to direct appeal in the absence of a reviewable record, since "an appellate court has no intelligible basis for decision unless a subordinate tribunal has made a record fully encompassing the issues." United Gas Pipe Line Co. v. FPC, 86 U.S.App.D.C. 314, 317, 181 F.2d 796, 799, cert. denied, 340 U.S. 827, 71 S.Ct. 63, 95 L.Ed. 607 (1950). See also City of Chicago v. FPC, 147 U.S.App.D.C. 312, 458 F.2d 731 (1971), cert. denied, 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972); Independent Broker-Dealers' Trade Ass'n v. SEC, 142 U.S.App.D.C. 384, 395, 442 F.2d 132, 143, cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 57 (1971). Here, however, we find that Congress intended to allow a direct petition to this court, so we cannot follow the example of United Gas Pipe Line and refer this case to the District Court for an evidentiary hearing.
 
 
 31
 The same dilemma was recognized by the Eighth Circuit in Union Electric Co. v. EPA, 515 F.2d 206 (No. 74-1614, decided March 27, 1975), the only other case we have found that involves a new information appeal under Section 307. Rejecting suggestions that evidence could be taken by appointment of a master or that controverted allegations might be sufficient to establish Section 307 jurisdiction, the Union Electric court held that a new information appeal under Section 307 must be premised upon denial of a prior request to the Administrator for revision of the challenged standard and the administrative record thereby developed.
 
 
 32
 The Senate Report indicates that it is only when the Administrator fails to act upon the basis of the new information that review is proper under § 307, implying that the information would have to be brought to the Administrator's attention. The petition for review in this circumstance would be a challenge to the Administrator's action and would require a scrutiny of the administrative record available to the Administrator to determine whether a clear error of judgment had been shown. It would not require that this court in the first instance develop a record on the challenges. * * *
 
 
 33
 515 F.2d at 220. While we are not as sure as the Eighth Circuit that this reading of Section 307 flows inexorably from the Senate Report,[18] we think this holding makes good sense and is consistent with the statutory scheme. As we indicated above, see --- U.S.App.D.C. at ---, ---, 515 F.2d at 659-662, we find no substantive difference between direct review of a new information challenge and review of the Administrator's refusal to revise a standard when presented with new information. In both cases a revision would be ordered only if it would be arbitrary and capricious to do otherwise. We think, however, that review of the Administrator's refusal is a considerably more desirable approach. Such a procedure would avoid litigation when the Administrator acceded to a request and, when he did not, it would present us with an administrative record, including the Administrator's views in a nonlitigation context, a judicially recognized distinction of importance. See, e. g., Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 419, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962).
 
 
 34
 Accordingly, we find it within our inherent powers to enforce our interest in informed decision-making by requiring presentation to the Administrator of any new information thought to justify revision of a standard of performance, or any other standard reviewable under Section 307, before we will exercise our Section 307 jurisdiction. The presentation should follow these procedures, which were suggested by EPA in the proceedings in the District Court, Supplemental Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 6, App. at 72:
 
 
 35
 (1) The person seeking revision of a standard of performance, or any other standard reviewable under Section 307, should petition EPA to revise the standard in question. The petition should be submitted together with supporting materials, or references to supporting materials.
 
 
 36
 (2) EPA should respond to the petition and, if it denies the petition, set forth its reasons.
 
 
 37
 (3) If the petition is denied, the petitioner may seek review of the denial in this court pursuant to Section 307.
 
 
 38
 This procedure imposes no new requirements of law; it merely sets forth a mechanism by which we may intelligently exercise the jurisdiction given us by the Congress. The right to petition an agency for revision of a rule is already available under the APA. 5 U.S.C. § 553(e). "(T)he requirement that administrators articulate the factors on which they base their decisions," Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 87, 439 F.2d 584, 597 (1971), is neither novel nor onerous.[19] Even if the agency did not suggest this requirement itself, we would have no hesitation in requiring it. See also Portland Cement Ass'n v. Ruckelshaus, supra ; Greater Boston Television Corp. v. FCC, 143 U.S.App.D.C. 383, 444 F.2d 841 (1970), cert. denied, 403 U.S. 923, 92 S.Ct. 2233, 29 L.Ed.2d 701 (1971); Medical Committee for Human Rights v. SEC, 139 U.S.App.D.C. 226, 432 F.2d 659 (1970), vacated as moot, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972). Lastly, our right to review denial of the petition for revision is no different than our right to review the standard on the basis of new information under Section 307. See supra, --- U.S.App.D.C. at --- - ---, 515 F.2d at 659-662.
 
 
 39
 Petitioners did write a letter to the Administrator requesting revision of the standard of performance for new coal-fired generators, and EPA did respond to the letter with a denial of the request. However, we do not find that exchange of letters to be a sufficient basis for exercise of our appellate jurisdiction. The arguments for both the Administrator and petitioners were developed largely during the litigation in the District Court, and are reflected in the briefs of the parties to this court. These facts and arguments are not, of course, in the record so far as the petition for review is concerned. Moreover, the Administrator has not had an opportunity to respond to many of petitioners' arguments outside the context of litigation, so there is the danger that his present posture may be based upon "post hoc rationalizations" rather than reasoned responses. See Citizens to Preserve Overton Park v. Volpe, supra, 401 U.S. at 419, 91 S.Ct. 814. Accordingly, we find that the procedures outlined above have not been met in this case and we dismiss the petition for review without prejudice to its subsequent refiling.
 
 
 40
 As a ground for dismissing the petition for review with prejudice, the Administrator argues that petitioners' claim is not "based solely" on information arising 30 or more days after promulgation of the standard of performance. There will be time enough later to give content to the limits of the "solely" language, but we should now indicate that, except in particularly simple cases, we shall look with disfavor upon undue semantic reliance on this preliminary jurisdictional rationale as a device to avoid discussion of the merits in the agency proceeding. While the substantiality of the Administrator's response must necessarily be related to the substantiality of the issues raised, Portland Cement Ass'n v. Ruckelshaus, supra, 158 U.S.App.D.C. at 327, 486 F.2d at 394, and our review under the "arbitrary and capricious" standard will accord great deference to the Administrator's determination, Citizens to Preserve Overton Park, Inc. v. Volpe, supra, we think there will be few, if any, requests for strengthening of standards of performance that merit no substantive response at all. In this regard, we note that the public's right to petition the Administrator for revision of a standard of performance and the Administrator's duty to respond substantively to such requests exist completely independently of Section 307 and this court's appellate jurisdiction. See supra, --- U.S.App.D.C. at --- - ---, 515 F.2d at 666-667. Thus Section 307's "solely" language will never by itself excuse the Administrator from his duty to respond on the merits to a request for revision of a standard.[20]
 
 
 41
 Since the District Court did not have jurisdiction over petitioners' suit under either Section 304 or the APA, the judgment appealed from in No. 74-1525 is affirmed. Since petitioners have not complied with the preliminary procedures before the EPA that we have herein mandated, the petition for review in No. 74-1587 is dismissed without prejudice.
 
 
 42
 It is so ordered.
 
 
 
 *
 Of the Fifth Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (1970)
 
 
 [1]
 Petitioners are two chapters of the Navajo Tribe, five individual Navajos, the governing body of the Jicarilla Apache Indian Reservation, and a nonprofit Arizona corporation consisting of about 200 people, mainly Indians, who reside on the Navajo Reservation. Petitioners all reside in the Four Corners area of the Southwest where a large network of coal-fired electric generating plants is now being erected. No. 74-1525 is an appeal from the District Court's dismissal of petitioners' suit for injunctive relief. No. 74-1587 is a petition for review filed directly in this court under § 307(b)(1) of the Clean Air Act, 42 U.S.C.A. § 1857h-5(b)(1) (1975 pocket part)
 
 
 [2]
 There is another alternative, but it is not technically feasible at this time. That is to remove the sulfur from the coal before burning. EPA, Report of the Hearing Panel, National Public Hearings on Power Plant Compliance with Sulfur Oxide Air Pollution Regulations, at 3 (Jan. 1974), Appendix (App.) at 104
 
 
 [3]
 Section 307(b), 42 U.S.C.A. § 1857h-5(b) (1975 pocket part), provides in full:
 (b) (1) A petition for review of action of the Administrator in promulgating any national primary or secondary ambient air quality standard, any emission standard under section 1857c-7 of this title, any standard of performance under section 1857c-6 of this title, any standard under section 1857f-1 of this title (other than a standard required to be prescribed under section 1857f-1(b)(1) of this title), any determination under section 1857f-1(b)(5) of this title, any control or prohibition under section 1857f-6c of this title, or any standard under section 1857f-9 of this title may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 1857c-5 of this title or section 1857c-6(d) of this title, or his action under section 1857c-10(c)(2)(A), (B), or (C) of this title or under regulations thereunder, may be filed only in the United States Court of Appeals for the appropriate circuit. Any such petition shall be filed within 30 days from the date of such promulgation, approval, or action, or after such date if such petition is based solely on grounds arising after such 30th day.
 (2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement.
 
 
 [4]
 The pertinent parts of § 304, 42 U.S.C. § 1857h-2(a) & (b) (1970) provide:
 Establishment of right to bring suit.
 (a) Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf
 (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
 (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.
 The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an emission standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be.
 Notice.
 (b) No action may be commenced
 (1) under subsection (a)(1) of this section
 (A) prior to 60 days after the plaintiff has given notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or
 (B) if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.
 (2) under subsection (a)(2) of the section prior to 60 days after the plaintiff has given notice of such action to the Administrator(,)
 except that such action may be brought immediately after such notification in the case of an action under this section respecting a violation of section 1857c-7(c)(1)(B) of this title or an order issued by the Administrator pursuant to section 1857c-8(a) of this title. Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.
 
 
 [5]
 Petitioners also suggested the possibility of jurisdiction in the District Court under the general federal question provision, 28 U.S.C. § 1331 (1970). The suggestion was made in their Response to Motion to Dismiss and Cross-Motion for Summary Judgment, at 19 n. 24, but petitioners neither amended their complaint to reflect this claim nor raised the issue before this court. Because we find that petitioners do not lack a forum in which to bring their action, we have no occasion to raise, sua sponte, the possibility of jurisdiction under § 1331
 
 
 [6]
 Petitioners also seem to suggest that the above cited cases support the proposition that a general rule can be reviewed even if the challenge is brought after expiration of the statutory review period. The cases do no such thing but rather allow a limited exception to a statutory time limit for challenging a general rule when the rule is "properly brought before this court for review of further Commission action applying it." Functional Music, Inc. v. FCC, 107 U.S.App.D.C. 34, 37, 274 F.2d 543, 546 (1958), cert. denied, 361 U.S. 813, 80 S.Ct. 50, 4 L.Ed.2d 81 (1959) (emphasis added). Unlike cases like Functional Music where a party may challenge a specific application of an invalid rule, this case involves a general out-of-time challenge to the validity of an EPA standard, exactly what Congress intended to bar by limiting appeals (absent new information) to within 30 days of the rule's promulgation. Section 307(b)(1), 42 U.S.C.A. § 1857h-5(b)(1). Such limits are very common in judicial review statutes. See, e. g., 15 U.S.C. § 78y (1970) (Securities & Exchange Commission); id. § 45(c) (Federal Trade Commission); 16 U.S.C. § 825l (1970) (Federal Power Commission); 49 U.S.C. § 1486(a) (1970) (Federal Aviation Administration). Indeed, in the Clean Air Act the Congress was particularly concerned with rapid review of the promulgated standards, and so imposed the especially short 30-day filing period (the above cited statutes all allow 60 days) "(i)n order to maintain the integrity of the time sequences provided throughout the Act * * *." S.Rep.No.91-1196, 91st Cong., 2d Sess., at 41 (1970). Moreover, Congress seems to have attempted to abolish even the Functional Music exception for proceedings under the Act. Section 307(b)(2), 42 U.S.C. § 1857h-5(b)(2), provides:
 Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement.
 Cf. 5 U.S.C. § 703, permitting such nonreviewability if prior opportunity for review is adequate and exclusive. See also Getty Oil Co. (Eastern Operations) v. Ruckelshaus, 3 Cir., 467 F.2d 349 (1972), cert. denied, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973).
 
 
 [7]
 Bifurcation of judicial review of deportation proceedings is not only inconvenient; it is clearly undesirable and not the necessary result from a fair interpretation of the pertinent statutory language
 Foti v. I&NS, 375 U.S. 217, 232, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963).
 
 
 [8]
 The validity of a standard of performance may be challenged in an enforcement proceeding after the running of the 30-day filing period if it can be shown that review could not have been obtained under the provisions of § 307(b)(1). Section 307(b)(2), 42 U.S.C. § 1857h-5(b)(2). See note 6 supra. See also Granite City Steel Co. v. EPA, 7 Cir., 501 F.2d 925, 928 (1974)
 
 
 [9]
 Section 304 allows challenges to the Administrator's failure to act, while § 307 speaks of challenges to his actions. While these appear to involve separate issues, overlap is conceivable, for instance, where the Administrator acts but, in the view of the challengers, does not act far enough. If nondiscretionary duties are involved, the challenge might fairly be said to lie under either § 304 or § 307. See Natural Resources Defense Council, Inc. v. EPA, 168 U.S.App.D.C. ---, ---, 512 F.2d 1351, 1356-1357 (No. 72-2233, decided May 19, 1975) (Wright, J., dissenting)
 The Tenth Circuit has taken the view that jurisdiction under § 307 necessarily ousts District Court jurisdiction under § 304 in all cases. Anaconda Co. v. Ruckelshaus, 10 Cir., 482 F.2d 1301, 1304 (1973). But see id. at 1307 (Lewis, C. J., concurring) (suggesting the possibility of concurrent § 304 and § 307 jurisdiction).
 
 
 [10]
 Petitioners also seem to argue that § 304 is a general grant of jurisdiction under the Clean Air Act and that § 307 is only a venue provision. Brief of petitioners at 43-44, citing Natural Resources Defense Council, Inc. v. EPA, 1 Cir., 484 F.2d 1331 (1973). This court has expressly rejected that argument in Natural Resources Defense Council, Inc. v. EPA, supra note 9, 168 U.S.App.D.C. at ---, 512 F.2d at 1354-1355
 
 
 [11]
 Since jurisdiction to review administrative action in Natural Resources Defense Council, Inc. v. Train, 167 U.S.App.D.C. ---, 510 F.2d 692 (1974), existed under both the APA and the Federal Water Pollution Control Act version of § 304, § 505, 33 U.S.C. § 1365 (Supp. III 1973), there was no need to decide whether the case involved failure to perform a nondiscretionary act reviewable under § 304 or an abuse of discretion reviewable under the APA. See note 16 infra
 
 
 [12]
 In Natural Resources Defense Council, Inc. v. EPA, supra note 9, 168 U.S.App.D.C. at ---, 512 F.2d at 1355, we found:
 (T)he language and history do not provide a basis for holding, as a general matter, that section 304 encompasses suits against the Administrator for taking steps alleged to be misguided or uninformed. Review of the Administrator's exercise of judgment, or "discretion," of course, is available under section 307, which establishes exclusive jurisdiction in the courts of appeals for action within its compass. * * *
 (Emphasis in original, footnote omitted.)
 
 
 [13]
 Failure to perform a discretionary act would be reviewable to see if discretion had been abused. Failure to perform a nondiscretionary act would be reviewable by the express terms of § 304
 
 
 [14]
 Nonetheless, when jurisdiction is properly premised upon § 304, review of abuses of discretion may be had under the concurrent jurisdiction of the APA. See notes 11 supra and 16 infra. Moreover, when the exclusive appellate jurisdiction of § 307 is not applicable, the APA grants District Court jurisdiction to review for abuses of discretion even if there is no § 304 jurisdiction at all. See infra, --- U.S.App.D.C. at --- - ---, 515 F.2d at 663-665
 
 
 [15]
 See also § 10(b), 5 U.S.C. § 703:
 The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action * * * in a court of competent jurisdiction. * * *
 (Emphasis added.)
 
 
 [16]
 The absence of APA jurisdiction in this case must be distinguished from its presence in cases properly brought under § 304 of the Clean Air Act. In Natural Resources Defense Council, Inc. v. Train, supra note 11, we held that the APA and the Federal Water Pollution Control Act version of § 304 provide concurrent bases of jurisdiction for suits against the Administrator. The reason for this was that § 304, unlike § 307, contains a broad savings clause:
 Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).
 Section 304(e), 42 U.S.C. § 1857h-2(e) (1970). Compare 33 U.S.C. § 1365(e) with 33 U.S.C. § 1369 (Supp. III 1973). Congress intended § 304 only to add to rights already enjoyed by citizens. See Conference Report to accompany H.R. 17255, 91st Cong., 2d Sess., at 56 (1970). If addition of a § 304 cause of action were read to restrict the APA cause of action that would have existed in its absence, then the intent of the savings provision would be frustrated. Thus there is concurrent jurisdiction with the APA for § 304 actions although not for those brought under § 307.
 
 
 [17]
 While all review under § 307 is "of action of the Administrator in promulgating" the standard at issue, it is obvious that new information challenges are not, by their very nature, directed to the validity of the Administrator's action at the time of promulgation, but rather to the validity of the promulgation at the time of suit, in light of the new information. Congress intended the reviewing court to inquire into whether the new information justified revision of the standard, however correct the Administrator's original action in promulgating it may have been. See S.Rep.No.91-1196, supra note 6, at 41-42, quoted in text, supra, --- U.S.App.D.C. at ---, 515 F.2d at 660
 The new information must, of course, be of the sort that is properly cognizable by the Administrator in making his original determination. Thus, for instance, if economic factors cannot be considered in setting a standard, a new information appeal cannot be based on new economic information. See Union Electric Co. v. EPA, 8 Cir., 515 F.2d 206, 216-219 (No. 74-1614, decided March 27, 1975). Since the Union Electric court found the Administrator could not consider either economic or technological factors in approving a state implementation plan under § 110 of the Clean Air Act, 42 U.S.C.A. § 1857c-5 (1975 pocket part), it found a § 307 appeal, whether filed in the initial 30-day period or thereafter, could only be based on information relating to public health or environmental quality. The court went too far, however, if it implied that these were the only proper bases for all § 307 appeals. In this case, for instance, the propriety of considering economic and technological factors in setting standards of performance under § 111 is clear on the face of the statute. See 42 U.S.C. § 1857c-6(a)(1), quoted in text supra, --- U.S.App.D.C. at ---, 515 F.2d at 656. Necessarily, then, both 30-day appeals and new information appeals from action under § 111 may be based on economic and technological data. See Essex Chemical Corp. v. Ruckelshaus, 158 U.S.App.D.C. 360, 486 F.2d 427 (1973).
 
 
 [18]
 The Eighth Circuit appears to rely for its interpretation of § 307 solely on this paragraph from the Senate Report, which directly follows the paragraph quoted in text, supra, --- U.S.App.D.C. at ---, 515 F.2d at 660
 New information may become available at some future date which indicates that a particular pollution agent or combination of agents is hazardous to the health of persons and therefore should be added to those pollution agents subject to the provisions of section 115. Conversely, new information may become available indicating that a pollution agent for which a prohibition had been established under section 115 is not hazardous to the health of persons. If the (Administrator) failed to act in either event, the promulgation could be challenged.
 S.Rep.No.91-1196, supra note 6, at 42 (emphasis added). We think the Eighth Circuit reads too much into this language when it finds it requires a preliminary request to the Administrator before a § 307 appeal can be brought. Even if the reference to § 115 (§ 112 of the final Act, 42 U.S.C. § 1857c-7) is only by way of illustration so that the paragraph applies as well to § 110, at issue in Union Electric, and § 111, at issue here, the paragraph does no more than say that a challenge may be brought if the Administrator fails to act. It is difficult to extrapolate from that noncommittal statement a rule that a request for revision must always be first presented to the Administrator by the petitioners before a petition for review may lie, even where the Administrator is already aware of the assertedly new information. We think the cited language supports our view that the statute is not inconsistent with the requirement of a prior petition for revision and that the statute prefers action by the Administrator to action by the court. But except for this indirect support, we do not suggest that the statute alone mandates the result we reach.
 
 
 [19]
 Naturally the expansiveness of the Administrator's articulation of reasons depends on the complexity and substantiality of the issues raised. We are by no means demanding comprehensive responses to frivolous petitions, but nor are we sanctioning summary dismissals of meritorious claims. See WAIT Radio v. FCC, 135 U.S.App.D.C. 317, 323, 418 F.2d 1153, 1159 (1969). In large part what we will demand by way of response from the Administrator will depend on what is presented by petitioners in support of their claim
 
 
 [20]
 The Administrator's failure to respond or inadequacy of response may be appealable to the District Court under the APA even if the substance of the denial is not so appealable. In such a case, the District Court would have the power to demand that the Administrator issue a response, or a more complete response, even if it would not have the power to invalidate the standard of performance or order a revision