**CIBA–GEIGY CORPORATION, Petitioner**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 93–1758.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 30, 1995.

Decided Feb. 21, 1995.

Cara S. Jablon, Washington, DC, argued the cause for the petitioner. On brief was Kenneth W. Weinstein, Washington, DC.

Daniel R. Dertke, Atty., Dept. of Justice, Washington, DC, argued the cause for the respondent. On brief were Lois J. Schiffer, Asst. Atty. Gen., and John A. Sheehan, Atty. Dept. of Justice, Washington, DC.

Before HENDERSON, RANDOLPH and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Petitioner Ciba–Geigy Corporation petitions for review of a final rule issued January 31, 1991, which set the Maximum Contaminant Level (MCL) and Maximum Contaminant Level Goal (MCLG) for the herbicide atrazine at 0.003 mg/l based on, inter alia, a Reference Dose (RfD) of 0.005 mg/kg/day, set by the EPA. For the reasons set forth below, we dismiss the petition without prejudice and remand to the Environmental Protection Agency (EPA) to reconsider the appropriate MCL and MCLG in light of the agency's October 1, 1993 revised RfD of .035 mg/kg and any other relevant factors.

The Safe Drinking Water Act (SDWA) requires the EPA to promulgate for each of various contaminants, including atrazine, (1) a "national primary drinking water regulation" consisting of either an MCL or, if it is not feasible to ascertain the contaminant level, a list of the known treatment techniques for the contaminant and (2) an MCLG. 42 U.S.C. §§ 300g–1, 300f(1). The MCLG is to be set at "the level at which no known or anticipated adverse effects on the health of persons occur and which allows an adequate margin of safety." 42 U.S.C. § 300g–1(b)(4). The MCL is to be set "as close to the maximum contaminant level goal as is feasible," 42 U.S.C. § 300g–1(b)(4), and is "the maximum permissible level of a contaminant in water which is delivered to any user of a public water system," 42 U.S.C. § 300f(3).

In a Final Rule issued January 30, 1991 the EPA established MCLGs and MCLs for various contaminants, including atrazine, an herbicide developed and in large part produced by the petitioner. 56 Fed.Reg. 3526 (1991). The Final Rule uses three different methods for establishing MCLGs, depending on a particular contaminant's carcinogenicity. 56 Fed.Reg. at 3531–33. The method it used for atrazine yielded an MCLG of .003 based on an RfD of 0.005 mg/kg/day. *Id.* at 3543–44. It then set the MCL at the same level. *Id.* at 3528.

On October 1, 1993, the EPA published a revised atrazine RfD of .035 mg/kg, which, under the method EPA had used in the Final Rule, would yield a higher MCLG of .02 mg/l.

On account of this change, on November 15, 1993, Ciba–Geigy filed a petition for review of the Final Rule's atrazine MCLG and corresponding MCL in this court under section 1448(a) of the SDWA. That section vests in this court exclusive review of "actions pertaining to the establishment of national primary drinking water regulations (including maximum contaminant level goals)" and requires that petitions for such review generally be filed "within the 45–day period beginning on the date of the promulgation of the regulation or issuance of the order with respect to which review is sought or on the date of the determination with respect to which review is sought." 42 U.S.C. § 300j–7(a). The statute permits late filing, however, "if the petition is based solely on grounds arising after the expiration of such period." *Id.* It is under this last provision that Ciba–Geigy filed its petition after the forty-five day period, citing as a new ground the recently revised RfD.

On November 16, 1993, the day after Ciba–Geigy filed its petition here, it filed a petition with the EPA as well, seeking reconsideration and revision of the atrazine MCL and MCLG and a stay of their effectiveness on account of the new RfD. The EPA denied the petition in a letter dated October 17, 1994, asserting that a new rulemaking to revise the atrazine MCLG and MCL would be "premature" and stating it was "not convinced that such a revision would adequately reflect the risk posed to public health from exposure to atrazine." Joint Appendix 468. Specifically, the EPA noted that it might have underestimated the risk of atrazine exposure and, in any event, was contemplating changes in its methodology that might affect the MCLG and MCL for atrazine. *Id.* Because Ciba–Geigy's petition here seeks review only of the Final Rule, and not of the EPA's denial of the subsequent petition, the agency asks that we dismiss the petition for failure to exhaust administrative remedies or for lack of ripeness. We agree the petition should be dismissed but, given the posture of this case, believe remand also appropriate.

In *Oljato Chapter of the Navajo Tribe v. Train,* 515 F.2d 654 (D.C.Cir.1975), this court construed section 307 of the Clean Air Act

(CAA) which, like section 1448(a) of the SDWA, permitted filing of a petition for review out of time if based on a new ground [1] and "f[ou]nd it within our inherent powers to enforce our interest in informed decision-making by requiring presentation to the Administrator of any new information thought to justify revision of a standard of performance, or any other standard reviewable under Section 307, before we will exercise our Section 307 jurisdiction." *Id.* at 666. The court reasoned that such a procedure "ma[de] good sense," was "consistent with the statutory scheme" and "would avoid litigation when the Administrator acceded to a request and, when he did not, it would present us with an administrative record, including the Administrator's views in a nonlitigation context, a judicially recognized distinction of importance." *Id.* at 665–66 (citing *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168–169, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). The court subsequently endorsed the same procedure, also under section 307, in *Group Against Smog & Pollution, Inc. v. EPA,* 665 F.2d 1284, 1290 (D.C.Cir.1981); and *Natural Resources Defense Council, Inc. v. Thomas,* 845 F.2d 1088 (D.C.Cir.1988). While we agree with the reasoning of those cases and find it equally applicable to petitions filed under section 1448(a) of the SDWA, we do not believe simple dismissal is required or appropriate under the particular circumstances here.

The *Oljato* rule derives not from any administrative exhaustion requirement but rather from ripeness concerns. *See Thomas,* 845 F.2d at 1091–93.[2] As the *Thomas* court observed:

"[T]he ripeness inquiry take [sic] into account pragmatic concerns regarding the institutional capacities of, and the relationship between, courts and agencies. These concerns include the agency's interest in crystallizing its policy before that policy is subject to judicial review. The court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting, and the petitioner's interests in prompt consideration of allegedly unlawful agency action."

*Id.* at 1093 (quoting *Better Gov't Ass'n v. Department of State,* 780 F.2d 86, 92 (D.C.Cir.1986)). As in *Thomas,* we conclude that "the prudential aspects of the ripeness doctrine considerations counsel against immediate decision," *id.,* but we believe that both judicial economy and the petitioner's interests favor remand over simple dismissal. *Cf. Moreau v. FERC,* 982 F.2d 556, 570 (D.C.Cir.1993) (dismissing without prejudice and remanding to agency claims that "will not be ripe or within our jurisdiction until FERC addresses them in the first instance"). Unlike the petitioners in the CAA cases, Ciba–Geigy has in fact presented the issue it desires reviewed to the EPA and obtained an unfavorable response. Thus, this petition would be ripe for review but for Ciba–Geigy's failure to file a petition for review of the EPA's reconsideration petition denial, which has deprived us of a complete record of the EPA's proceedings. Accordingly we dismiss Ciba–Geigy's petition without prejudice and remand the case to develop a reviewable record and, in the interest of economy, to consider again whether to revise the atrazine MCLG and MCL in light of the new RfD.

*So ordered.*

---

1. Then section 307 of the CAA provided in part: A petition for review of action of the Administrator in promulgating ... any standard of performance under (Section 111) ... may be filed only in the United States Court of Appeals for the District of Columbia.... Any such petition shall be filed within 30 days from the date of such promulgation, or after such date if petition is based solely on grounds arising after such 30th day.

42 U.S.C. § 1857h–5(b).

2. In fact, the Supreme Court has since made it clear that courts cannot require exhaustion of administrative remedies where, as here, it is not expressly required either by statute or agency rule. *See Darby v. Cisneros,* — U.S. —, —, 113 S.Ct. 2539, 2548, 125 L.Ed.2d 113 (1993).