**NATURAL RESOURCES DEFENSE COUNCIL, INC., and Environmental Defense Fund, Inc., Plaintiffs,**

**v.**

**Russell E. TRAIN and the Environmental Protection Agency, Defendants,**
and
**National Forest Products Association, Intervenor-Defendant.**

**Civ. A. No. 74-1485.**

United States District Court, District of Columbia.

June 5, 1975.

Daniel M. Lewis, Patrick F. J. Macrory, Peter T. Grossi, Jr., Arnold & Porter, Washington, D. C., J. G. Speth, NRDC, Washington, D. C., for plaintiffs.

Martin Green, Dept. of Justice, Washington, D. C., for defendants.

Francis M. Shea, Richard T. Conway, David Booth Beers, I. Michael Greenberger, Shea & Gardner, Washington, D. C., for intervenor-defendant.

MEMORANDUM AND ORDER

JOHN LEWIS SMITH, Jr., District Judge.

This case involves questions of statutory interpretation and the consequent validity of certain regulations issued by the Environmental Protection Agency (EPA). Plaintiffs are the Natural Re-sources Defense Council, Inc. and the Environmental Defense Fund, Inc., two respected environmental litigants. Defendants are the Administrator of EPA and the National Forest Products Association (NFPA), an intervenor representing local organizations and firms engaged in the forest products industry. Jurisdiction is based on 33 U.S.C. § 1365(a), 28 U.S.C. § 1331(a), and 5 U. S.C. §§ 701–06. The matter is before the Court on defendants' Motion to Dismiss or, in the Alternative, to Stay, and plaintiffs' Motion for Summary Judgment.

I

Under the Federal Water Pollution Control Act Amendments of 1972 (FWPCAA or Act), an explicit national goal is the restoration and maintenance of waters so that by 1983 they will be fit for human recreation and wildlife propagation. 33 U.S.C. § 1251(a)(2) (Supp. III, 1973). To assist in achieving this goal, one subchapter of the Act provides for the construction of sewage treatment works and for the development and implementation of areawide waste treatment management plans. *Id.* § 1281(a); *see also id.* § 1251(a)(5). The States retain primary responsibility under the Act for abating and preventing water pollution, with the Federal role being limited to coordination and funding. *Id.* § 1251(b).

Section 208, 33 U.S.C. § 1288, is the key provision in the Act governing areawide waste treatment management planning. Under subsection (a)(1) of that section,[1] EPA is to issue guidelines "for the identification of those areas which, as a result of urban-industrial concentrations or other factors, have substantial water quality control problems." *Id.* § 1288(a)(1); *see* 40 C.F.R. § 126.10 (1974). The Governor of a State must then identify each area which has substantial water quality control problems, and designate a representative organiza-

[1]. Henceforth, the term "subsection" is used in this Memorandum to refer to a subsection of Section 208 of the FWPCAA.

tion including local elected officials to develop a plan for the area. 33 U.S.C. § 1288(a)(2). Special provision is made for interstate problem areas and planning organizations. *Id.* § 1288(a)(3). If the Governor does not designate a particular area—unless he expressly "de-designates," that is, excludes the area—local authorities may designate additional problem areas and planning organizations. *Id.* § 1288(a)(4). To this point there are thus three possible types of areas and organizations—Governor-designated, interstate, and local-designated.

The final provision for planning under Section 208(a) is the subject of this lawsuit. What is not covered in subsections (a)(2)–(4) *supra* is treated by subsection (a)(6), which provides: "The State shall act as a planning agency for all portions of such State which are not designated under paragraphs (2), (3), or (4) of this subsection." *Id.* § 1288(a)(6). The dispute among the parties revolves around the question of what subsection (a)(6) requires of a State in its planning efforts on behalf of the non-previously-designated portions of the State.

Plaintiffs take the position that the State under subsection (a)(6) must do exactly what the planning organizations designated under subsections (a)(2)–(4) are required to do; that is, develop a plan under subsection (b)(2), 33 U.S.C. § 1288(b)(2), to control point and non-

point sources of pollution. Plaintiffs claim that this State-prepared plan must be ready by mid-July, 1976 so that phase II (implementation of the plan) may proceed on schedule and attain the 1983 goal of swimmable, fishable waters. Plaintiffs accordingly oppose as both inadequate and illegal the regulations that EPA has issued to implement subsection (a)(6), see 40 C.F.R. §§ 126.2(d), 126.-20, and seek declaratory and injunctive relief against these regulations. [2]

EPA has come to agree with plaintiffs that subsection (a)(6) requires the State, acting in the same capacity as designated organizations, to apply all of the subsection (b)(2) criteria in non-designated portions of the State. However, there are several qualifications to EPA's agreement with plaintiffs. First, EPA claims that only its subsection (a)(1) guidelines *supra* are mandated by Section 208, and that its discretionary subsection (a)(6) regulations are valid insofar as they specify merely *partial* waste treatment management obligations imposed upon a State. *See* 40 C.F.R. § 126.20(a), *supra* note 2. Second, EPA declares that it has already advised the States by letter of their comprehensive subsection (a)(6) planning responsibilities, and notes in support of its request for a stay of the present proceedings that clarifying regulations are in the process of being developed. Lastly, EPA asserts that planning under subsection (a)(6) need not meet the same strict time limitations applicable to plan-

2. 40 C.F.R. § 126.2(d) defines as a Section 208 planning area "the area designated under section 208(a)(2), (3), or (4) of the Act." Subsection (a)(6) portions of the State are thus excluded from the extensive planning requirements specified in the Act and the regulations.

40 C.F.R. § 126.20 is the only regulation that addresses a State's subsection (a)(6) responsibilities. It provides: "(a) The State shall act as the planning agency for all areas not designated under [the preceding regulations]. Where the Governor determines, pursuant to section 208(b)(4) of the Act, that the requirements of section 208(b)(2)(F through K) should be applied on a statewide basis, the State may apply

the planning process established pursuant to section 303 of the Act as the process for carrying out the requirements of the sections. Funds which may be available under section 106 of the Act may be utilized to conduct planning pursuant to this section. (b) Assumption by the State of the planning responsibilities in these areas does not foreclose the establishment of other planning processes at the substate level."

Subsection (a)(6) portions and planning agencies have also been specifically excluded from Section 208 funding under 33 U.S.C. § 1288(f). *See* 39 Fed.Reg. 17202 (1974); 40 C.F.R. § 35.1053; 40 C.F.R. § 126.20(a), *supra.*

ning for substantial water quality problems under subsections (a)(2)–(4).

Defendant NFPA has a diametrically opposed view of subsection (a)(6) from that of NRDC and EPA. NFPA claims that there is no duty at all imposed upon a State by the statute to engage in extensive areawide waste treatment management planning. Since subsection (a)(6) allegedly addresses "nonproblem" portions of a ′State, and since the key terms of Section 208—"area" or "areawide," "designate," and "organization"—are lacking in subsection (a)(6), NFPA argues that a State need only engage in general, discretionary planning, like that described in Section 303(e) of the Act. 33 U.S.C. § 1313(e). NFPA also points out that under plaintiffs' interpretation of subsection (a)(6), some apparent inconsistencies within the statute would result,[3] and wasteful, duplicative planning would be required where water pollution problems might not even exist. Finally, NFPA relies upon the Act's legislative history, contending that the Senate version of subsection (a)(6), which clearly compelled Statewide planning for non-designated portions, was significantly modified by the Conference Committee.[4]

## II

Subsection (a)(6) on its face does not definitively reveal which of the competing interpretations should prevail, that is, exactly what type of planning for non-designated portions a State should engage in. Under such circumstances the particular statute should be read in the context of the entire Act so that its purpose together with the intent of the whole Act may be effectuated.

United States v. Menasche, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955).

As noted, Section 208 is a critical provision in a broad, far-reaching Act. *See generally* United States v. Ashland Oil & Transportation Co., 504 F.2d 1317, 1320–25 (6th Cir. 1974). It contains unique authority to control water pollution from point sources (e.g., factory or pipe discharge; *see* 33 U.S.C. § 1362(14)) and from nonpoint sources (e.g., mining or agricultural runoff). Its implementation features distinguish it from Section 303(e) of the Act, which emphasizes ongoing State planning and limits State efforts to stationary sources of pollution. *See* 40 C.F.R. pts 130–131. The Section is also intended to coordinate and integrate other planning, construction, and discharge permit provisions of the Act. 33 U.S.C. §§ 1288 (d), (e); 1313(e)(3)(B). Section 208 charts a course not only for the cleaning up of polluted waters but also for the prevention of future pollution by identifying problem sources, regulating construction of certain industrial facilities, and developing processes to control runoff sources of pollution. While Section 208 focuses on "urban-industrial" areas with substantial water quality control difficulties, it also directs attention to other geographical locations with water pollution problems, such as forests, mining areas, farms, and salt water inlets. As a "bottom line" for the Section 208 waste treatment management activities, the Act prescribes a 1983 goal of clean waterways. The period between October 18, 1972 and July, 1976 is mainly a planning and development stage. The remaining seven years are for im-

---

3. *See, e. g.*, 33 U.S.C. § 1288(b)(4) (providing for application of subsections (b)(2)(F)–(K) to entire State, which subsection (a)(6) already does, according to plaintiffs' construction) ; *id.* § 1288(a)(2) (governing addition and modification of areas appropriate for waste treatment management, which would already be covered by subsection (a)(6) under plaintiffs' interpretation).

4. *Compare* S. 2770, § 208(a)(6), 92d Cong., 1st Sess (1971) (reproduced in A Legislative History of the FWPCAA, at 1594 (1973)) *with* 33 U.S.C. § 1288(a)(6). The Senate version provided, "The Governor shall designate a planning agency for all areas of a State which are not designated under paragraphs (2), (3), or (4) of this subsection." The House version had no comparable provision. *See* Legislative History, *supra*, at 952.

**1390**

plementing plans and eliminating the more difficult and persistent sources of water pollution. *See* EPA, Water Quality Strategy Paper 10–11 (1974).

■ Subsection (a)(6) is the residual clause in the areawide waste treatment management planning provision. As such it deals with the non-designated or "leftover" portions of the State not addressed by the Governor or by local officials in subsections (a)(2)–(4). The plain implication is that subsection (a)(6) empowers the State to achieve what the other planning organizations under the previous subsections are directed to achieve. Like the other planning organizations, the State under subsection (a)(6) is to engage in subsection (b)(2)(A)–(K) planning for the area within its authority; that is, for "all portions of such State which are not [otherwise] designated" by the Governor or by local officials. It would be illogical for Congress to set forth a detailed scheme for State, interstate, and local water pollution planning—and then to lump the remainder of State territory into a residuary provision with veiled instructions to the State to do as it saw fit regarding waste treatment control, or to carry out the already required Section 303(e) planning.

The Court also notes that more than half of the Governors have non-designated their entire State from coverage under Section 208. There are presently only about 85 designated problem areas in the United States, leaving an estimated 95% of the nation's waterways non-designated. Only one State, Maine, has a Statewide waste treatment management plan in operation. Surely the Congress did not intend Section 208 planning to be the exception rather than the rule, nor, despite the States' primary responsibility under the Act, were the Governors and local officials given effective veto power over Section 208. *Cf* Train v. City of New York, 420 U.S. 35, 44–46, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975).

■ It is admitted by all parties that the non-designated State areas may not suffer from substantial water quality control problems. These remaining portions most likely will not be of the urban-industrial type, quickly identified as priorities or as health and safety hazards by Governors and local officials. Rather, they will probably be rural, agricultural, mining, or forest areas with somewhat unique pollution problems caused by "other factors." The Act does not eliminate such areas from planning even if a preference is given to urban-industrial problem areas. *See* 33 U.S.C. § 1288(a)(1); 40 C.F.R. §§ 126.-10(a)–(b). In fact, subsections (b)(2)(F)–(K) of Section 208 specifically address nonpoint pollution problems in areas which might not have been selected in the primary designation process (i.e., under subsections (a)(2)–(4)). Likewise, some of the point source planning provisions under subsections (b)(2)(A)–(E) are aimed at preventing future degradation of pollution-free areas.

■ As for conflicts in the Act caused by giving subsection (a)(6) such an expansive meaning, the Court believes that subsections (a)(2), (3), (4), and (6) regulate *which level* of government is to develop a waste treatment management plan— not *whether* an area or portion of a State is to be covered by such a plan. The provision for additional or modified areas under subsection (a)(2) is thus consistent with this interpretation. It allows a Governor subsequently to designate a part of a subsection (a)(6) portion of the State as a more problematic area requiring planning coverage by a specially appointed organization under subsection (a)(2). Furthermore, subsection (b)(4) does not contravene the Court's approach to subsection (a)(6). This subsection, providing for Statewide application of the nonpoint planning requirements, enables a Governor to take a unified approach to runoff pollution problems through bypassing the various planning organizations and coordinating the Section 208 plan with the regulatory program developed under Section 303.

It is possible that the use of terms like "area" and "designate" and "organization or agency"—all present in the Senate version of the bill—could have made subsection (a)(6) crystal clear and removed any potential ambiguity from its interpretation. The Conference Committee, however, modified the Senate version, and the Conference Report in explaining the change merely paraphrased the language of subsection (a)(6). *See* Legislative History, *supra* note 4, at 300. Still, the FWPCAA is not to be given a crabbed or technical construction. Train v. City of New York, 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975). Subsection (c)(1), 33 U.S.C. § 1288 (c)(1), uses the term "planning agency" interchangeably with subsections (a) (2)–(4)'s planning "organization." "Portions" in subsection (a)(6) apparently substitutes for "area" in order to convey the sense of large, non-discrete, residual regions without carefully drawn boundaries. Moreover, the Senate's leading conferee as well as the past and present Administrators of EPA have all concurred in giving a broad, generous construction to subsection (a)(6).[5]

The Court further finds the position of EPA in this litigation to be untenable. If EPA agrees with plaintiffs' interpretation of subsection (a)(6), its regulations should reflect that agreement. Instead, 40 C.F.R. § 126.2(d) relieves States acting under subsection (a)(6) from the intensive subsection (b)(2)(A)–(K) planning requirements. 40 C.F.R. § 126.20(a) permits States to substitute Section 303 planning for that

mandated by Section 208. And 40 C.F.R. § 35.1053 denies States any Section 208 funding for subsection (a)(6) activities. *See* note 2 *supra*. These shortcomings cannot be remedied by reliance upon the alleged "non-mandatory" nature of the regulations or upon EPA's gradual approach to water pollution problems. EPA's regulations have positively misled the States in regard to subsection (a)(6) responsibilities. This is not "partial guidance" of the States. It is an impermissible mis-construction of the Act which must be cured swiftly so that the States can understand and fulfill their total planning responsibilities under subsection (a)(6). Nor can the Court accept EPA's "step by step" or adjudicatory method of issuing subsection (a)(6) guidelines. Erroneous regulations should not be allowed to stand for a period of months or years. Moreover, planning requirements and directives should precede the actual planning by States lest disorder and inefficiency reduce State efforts to naught. Equally as important, valuable time and resources cannot be squandered while strict statutory deadlines are facing the agency and the States.

As plaintiffs have stressed on numerous occasions, the subsection (a)(6) regulations will not call for rigorous planning where no pollution problems exist. Rural areas need not implement safeguards for urban pollution problems, and vice versa; planning can be tailored to a region's peculiar problems, and where possible coordinated with Section 303 planning. A State may certify large portions of its territory as pollution-free

5. *See* Legislative History, *supra* note 4, at 169 (statement of Sen. Muskie, Senate sponsor of FWPCAA); *id.* at 145 (letter from William Ruckelshaus, former Administrator of EPA); Letter from EPA Administrator Russell Train to Sen. Muskie, Nov. 1, 1974).

In Senate debate on the Conference Report, Sen. Muskie introduced a memorandum concerning the conferees' agreement on various provisions of the Act. Concerning Section 208 he stated: "The Senate bill and the House amendment both required the development of areawide waste management plans.

The House amendment limited such . . . plans to designated areas within a State, while the Senate bill required that regions be designated for the entire geographic area of each State. The Conferees have agreed to require State-wide planning, either through a regional process in a designated area or by the State for areas outside of designated regions. . . . The Conferees . . . agreed that waste management agencies must be designated covering the entire area of the State." Legislative History, *supra* note 4, at 169.

and concentrate on preventive measures for these portions as well as on abatement efforts for the substantial problem areas. The same intensive waste treatment management planning will certainly not be required over every cubic inch of the nation's waterways. The Act's goal of clean waters by 1983 can be achieved through a multitude of planning approaches.

It is not for this Court, however, to define or promulgate the subsection (a)(6) regulations. Hopefully, EPA's draft regulations already address the complexities of a State's subsection (a)(6) planning role and delineate the need for State and local cooperation. In any event, a full and prompt rulemaking proceeding will enable interested parties including the States to offer further comments to EPA with reference to the content of the proposed guidelines.

### III

### ORDER

For the reasons stated *supra,* defendant Environmental Protection Agency is enjoined to begin the process of developing and promulgating Section 208(a)(6) regulations consistent with the provisions of this Memorandum and to revise existing regulations inconsistent therewith. Defendants' Motion to Dismiss or, in the Alternative, to Stay is hereby denied. Plaintiffs' Motion for Summary Judgment is hereby granted.

Plaintiffs in this action are entitled to a declaratory judgment that: (1.) it is a national goal under the Federal Water Pollution Control Act Amendments of 1972 to restore and maintain the nation's waters so that by 1983 they will be fit for human recreation and wildlife propagation; (2.) 33 U.S.C. § 1288(a)(6) requires a State to act as the Section 208 planning agency for non-designated portions of the State in the same manner as planning organizations designated under 33 U.S.C. §§ 1288(a)(2)–(4); (3.) 33 U.S.C. §§ 1288(b)(2)(A)–(K) waste treatment management planning is required of a State acting under Section 208(a)(6)

for portions of the State not designated under 33 U.S.C. §§ 1288(a)(2)–(4); (4.) 33 U.S.C. §§ 1288(d)–(e) require that in all non-designated portions, grants made under 33 U.S.C. § 1281(g)(1) and permits issued under 33 U.S.C. § 1342 shall be made in conformity with the Section 208(a)(6) plan for such portions; and (5.) funding for areawide waste treatment management planning under 33 U.S.C. § 1288(f) shall be available to a State for Section 208(a)(6) planning.

In view of the fact that the 1976 goal of plan submission cannot feasibly be met for Section 208(a)(6) plans—although such a deadline is prescribed by the Act—the plaintiffs and EPA shall, within 15 days of this Order, furnish (jointly and individually) a proposed timetable to the Court for a rulemaking proceeding for Section 208(a)(6) regulations and for the phased compliance of Section 208(a)(6) planning with the requirements of Section 208 and the goals of the Act.

### FINAL ORDER

Upon consideration of the pleadings, memoranda, affidavits, the Court's Opinion and Order of June 5, 1975, and the proposed timetables submitted by the parties in this action, it is by the Court this 23rd day of July 1975, ordered, that:

1. Defendants, the Environmental Protection Agency (EPA) and its Administrator, Russell Train, shall, no later than November 10, 1975, promulgate all final regulations necessary to implement fully this Order and the Court's June 5, 1975, declaratory judgment, memorandum opinion, and Order, and to modify any existing regulations inconsistent with said declaratory judgment, memorandum opinion, and Orders.

2. Defendants EPA and Russell Train shall, no later than July 14, 1975, publish proposed regulations amending 40 C.F.R. Parts 130 and 131 consistent with said declaratory judgment, memorandum opinion, and Orders and shall thereafter afford the

public a period of not less than 45 days for comment on such regulations.

3. Defendants EPA and Russell Train shall, no later than September 1, 1975, publish in proposed form all other regulations necessary to implement said declaratory judgment, memorandum opinion, and Orders, which shall be contained in 40 C.F.R. Parts 35 and 126, and shall thereafter afford the public a reasonable period of time for comment on such regulations.

4. All such proposed and final regulations shall contain time schedules which will achieve and require the final submission to EPA of complete Section 208 plans for non-designated areas no later than November 1, 1978. EPA may establish a date for pre-adoption review of such plans prior to the November 1, 1978 final deadline.

5. This Court retains jurisdiction of this case until the promulgation of final regulations fully implementing its declaratory judgment, memorandum opinion and Orders.