**UNITED STATES BREWERS ASSOCIA-TION, INC., et al., Petitioners,**

**v.**

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 77-1867.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 13, 1978.

Decided May 23, 1979.

As Amended May 31, 1979.

William D. Tyler, Washington, D. C., for petitioner.

Mark R. Sussman, Atty., Dept. of Justice, Washington, D. C., with whom James W.

Moorman, Asst. Atty. Gen., Angus Macbeth, Atty., Dept. of Justice, Joan Z. Bernstein, Gen. Counsel, E. P. A., and Merideth Wright, Atty., E. P. A., Washington, D. C., were on the brief for respondent.

Samuel Bernstein, New York City, was on the brief for amicus curiae urging that the decision of the E. P. A. be set aside and the Beverage Container Regulations declared void.

Before BAZELON, LEVENTHAL and ROBB, Circuit Judges.

ROBB, Circuit Judge:

The United States Brewers Association, Inc. (the Brewers) seeks review of a final order of the Administrator of the United States Environmental Protection Agency, entered August 16, 1977.[1] In the challenged order the Administrator denied the Brewers' petition to repeal the Agency's "Solid Waste Management Guidelines for Beverage Containers". The Agency has moved to dismiss the petition for review for lack of jurisdiction. We deny the motion to dismiss and affirm the Administrator's order.

The Beverage Container Guidelines (40 C.F.R. Part 244) describe a system for resource conservation which is recommended to state and local governments. Section 6004 of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6964 requires that executive agencies insure compliance with these recommended Guidelines. The Guidelines require that all beverage containers sold at federal facilities be made "returnable" by the requirement of a five-cent deposit as an incentive to the consumers to return empty containers for reuse or recycling. Returnable containers need not be refillable; cans and non-refillable bottles may be used. Beverages in sealed containers sold on federal facilities must be labeled returnable and deposits must be refunded

to the consumer when containers are returned. Dealers are forbidden to procure beverages in beverage containers from distributors who refuse to cooperate in the program.

## I. JURISDICTION

The motion to dismiss for want of jurisdiction raises novel and difficult questions which require us to examine the statutory and procedural background of the Administrator's order denying the petition for review.

The guidelines for beverage containers are one of a series of solid waste management guidelines issued by EPA. They were promulgated September 21, 1976, pursuant to section 209(a) of the Solid Waste Disposal Act as amended by the Resource Recovery Act of 1970. (P.L. 91–512, 42 U.S.C. § 3254c (1970)) (1970 Act) That section required EPA to "recommend to appropriate agencies and publish in the Federal Register guidelines for solid waste recovery, collection, separation and disposal systems . . . ." Section 211 of the 1970 Act, 42 U.S.C. § 3254e (1970), made compliance with the guidelines by federal executive agencies mandatory.

On October 21, 1976, one month after promulgation of the Beverage Container Guidelines, the Resource Conservation and Recovery Act of 1976 was enacted. (P.L. 94–580, 42 U.S.C. § 6901 et seq.) (1976 Act) The 1976 statute substantially amended the Solid Waste Disposal Act of 1970. It replaced section 209 of the former Act with a new section 1008, 42 U.S.C. § 6907. The Report on the Senate bill, from which section 1008 was derived, states that "section 209 is amended to broaden the scope of information and solid waste management guidelines authorized by the Resource Recovery Act of 1970." S.Rep.No. 94–988, 94th Cong., 2d Sess. 12 (1976). Additionally, the 1976 Act reenacted section 211 of the 1970 Act (Applicability of Solid Waste Dis-

1. The Wholesale Beer Association Executives, an unincorporated trade association of forty-one independent state beer wholesalers has filed a brief as amicus curiae in support of the petitioners.

posal Guidelines to Executive Agencies) verbatim as section 6004, 42 U.S.C. § 6964, and added a new section 4002, 42 U.S.C. § 6942, which requires federal guidelines to assist in the development and implementation of state solid waste management plans.

The 1970 Act contained no specific provision for judicial review of the Administrator's action in promulgating regulations. The 1976 Act, section 7006, 42 U.S.C. § 6976, provided for review on petition to this court:

> Any judicial review of final regulations promulgated pursuant to this chapter shall be in accordance with sections 701 through 706 of Title 5, except that—
>
> (1) a petition for review of action of the Administrator in promulgating any regulation, or requirement under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. Any such petition shall be filed within ninety days from the date of such promulgation, or after such date if such petition is based solely on grounds arising after such ninetieth day.

In addition the 1976 Act provided for a petition to repeal a regulation (section 7004, 42 U.S.C. § 6974(a)):

> (a) Petition.—Any person may petition the Administrator for the promulgation, amendment, or repeal of any regulation under this chapter. Within a reasonable time following receipt of such petition, the Administrator shall take action with respect to such petition and shall publish notice of such action in the Federal Register, together with the reasons therefor.

The 1976 Act contained no savings clause explicitly keeping in effect regulations promulgated under the 1970 Act until changed by action of the regulatory agency. This led EPA's deputy assistant administrator for solid waste management programs to inquire of agency counsel "whether EPA must republish the guidelines already issued under section 209 of the Solid Waste Disposal Act before federal agencies can be required, by section 6004 of the amended Solid Waste Disposal Act, to comply with

them." On November 12, 1976 the Agency counsel responded that republication was not necessary. In his memorandum, contained in the Joint Appendix at pages 84–88, counsel first reviewed the statutory background of the problem, as follows:

### BACKGROUND

. The Solid Waste Disposal Act (42 U.S.C. 3251ff.) was amended in several respects by the Resource Conservation and Recovery Act of 1976, including renumbering of all sections. Section 209 of the existing SWDA, authorizing EPA to publish guidelines, was amended to broaden the scope of the guidelines, and to require that congressional committees be notified prior to EPA's publication of guidelines, and renumbered as section 1008. Even though the wording of § 209 is not adopted by § 1008, each requirement or authorization by § 209 is also required or authorized by § 1008. Section 211 of the existing SWDA, making those guidelines mandatory for federal facilities, was simply renumbered as section 6004.

Counsel noted that Congress was "fully aware" of the guidelines published on September 21, 1976, and he concluded that the legislative history disclosed a congressional intent that the Guidelines should remain in effect. He reasoned that the requirement that congressional committees be notified prior to the publication of the Guidelines "was to let Congress know of EPA's proposals in the 'beginning' when they were 'new', and 'not after the event'." He recommended however that the Agency "put out an amendment in the Federal Register updating the authority section of each guideline to read 'under authority of [the relevant sections] of the Solid Waste Disposal Act of 1965, as amended by the Resource Recovery Act of 1970 and the Resource Conservation and Recovery Act of 1976'." He recommended further that the Agency "also review the guidelines for consistency with Section 1008(a) of the RCRA and write a letter to the appropriate congressional committees embodying its conclusions."

The Agency did not republish the Guidelines, nor did it "put out" an amendment in the Federal Register and write a letter to the appropriate congressional committees.

On February 7, 1977 the Brewers filed their petition with the Administrator, requesting the repeal of the Guidelines promulgated on September 21, 1976.[2] The petition stated that it was filed "[p]ursuant to Section 7004(a) of the Resource Conservation and Recovery Act of 1976, 42 U.S.C. § 6974(a)," providing for petitions to repeal regulations. The petitioners contended that the Guidelines for beverage containers were inconsistent with both section 209 of the 1970 Act and section 1008 of the 1976 Act. Specifically the petitioners argued that the definition of "disposal" under section 209 of the 1970 Act was not sufficiently broad to encompass the EPA guidelines. The Guidelines were invalid under the 1976 statute, said the Brewers, because that act envisioned guidelines descriptive of alternate waste management practices, whereas the EPA guidelines prescribed a specific practice. Furthermore, the Brewers contended that deposit Guidelines advocated a policy preference for resource conservation in violation of the statute. Finally it was argued that because the Guidelines were not "disposal" guidelines they could not be made mandatory upon federal agencies by section 6004 of the 1976 Act.

On August 16, 1977 the Administrator, holding that the Guidelines were valid under both the 1970 Act and the 1976 Act, denied the Brewers' petition for their repeal. The Brewers filed their petition for review in this court on September 26, 1977. The Administrator filed his motion to dismiss November 1, 1977.

As we have said, the 1970 Act contained no specific provision for judicial review of the Administrator's actions. Any judicial review of the Administrator's actions under that statute presumably would have been available only in the District Court pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Section 7006 of the

1976 Act however, 42 U.S.C. § 6976, provides that petitions for review "of action of the Administrator in promulgating any regulation, or requirement under this chapter" must be filed in this court within ninety days after the Administrator's action, unless the petition "is based solely on grounds arising after such ninetieth day." The Administrator says the Brewers could have filed a petition for review of the Beverage Container Guidelines during the 90-day period beginning on October 21, 1976, when the 1976 Act became law, and extending to January 18, 1977. Because no petition for review by this court was filed within the 90-day period, and because the petition to the Administrator for repeal of the Guidelines was not based solely on grounds arising after the 90th day, the Administrator argues that the petition for review must be dismissed. In the Administrator's view "[p]etitioners by their belated raising in an administrative petition of entirely legal arguments which were available to them throughout the three-month review period, seek to evade the force and effect of that 90-day limitation." (Respondent's Motion to Dismiss at 8–9)

 The Administrator's refusal to repeal his regulation was, for jurisdictional purposes, equivalent to its promulgation and therefore reviewable. *Oljato Chapter of the Navajo Tribe v. Train,* 169 U.S.App. D.C. 195, 515 F.2d 654 (1975). We have held however that a petition to repeal a regulation cannot be used to give this court jurisdiction if the petitioner has let the regulation go into effect without availing himself of the right to review which was open to him during the statutory review period. *Id.* at 202 and n. 8, 515 F.2d at 661 and n. 8. In other words, denial of a request to repeal cannot open up the merits of a regulation for review in the courts unless review was not previously available, or unless the grounds for the new challenge arose after the initial review period had run.

2. The petition was filed by the Labor Management Committee for Solid Waste Policy, of which our petitioner, the United States Brewers Association, Inc., is a member.

It is doubtful whether review in this court was available prior to consideration of the validity of the Guidelines by the Administrator. The judicial review provisions of the 1976 Act, section 7006, 42 U.S.C. § 6976, provided only for petitions for review in this court of regulations promulgated "under this chapter". The Guidelines for Beverage Containers however were issued under the authority of section 209(a) of the Solid Waste Disposal Act of 1965 (P.L. 89–272) as amended by the Resource Recovery Act of 1970 (P.L. 91–512), 41 Fed.Reg.No. 184, p. 41203, Col. 3. Accordingly, the provision in the 1976 Act providing for review in this court arguably does not apply to regulations issued pursuant to the 1970 Act because they were not promulgated "under this chapter", i. e., the 1976 Act. As stated earlier, regulations promulgated under the 1970 statute would have been reviewable, if at all, only in the District Court pursuant to the Administrative Procedure Act. Indeed, as disclosed by the opinion of agency counsel, to which we have referred, there was even some doubt whether a regulation issued under the 1970 Act continued in effect without reissuance pursuant to the 1976 statute. The regulations were promulgated under a previous statute, and the Agency had not determined that the regulations were consistent with the new statute and still in effect. Thus a petition to this court by the Brewers shortly after the enactment of the new statute likely would have been met with the reasonable contention that there was nothing to review.

An additional factor militating against granting review, had the Brewers petitioned us directly following passage of the 1976 Act, would have been the absence of a record of the Agency's treatment of the legal issue at hand. Although the absence of a record might not have precluded review, we would have been reluctant to pass upon the merits without the benefit of prior consideration of the issues by the Agency. By virtue of the Brewers' petition to repeal the regulation and the Administrator's opinion rejecting it, however, we are now presented with a proper record. This procedure is consistent with that suggested in the *Oljato* case, *supra*, at 206–08, 515 F.2d at 665–67 (1975).

The Administrator's refusal to repeal the regulations was his first definitive action under the 1976 Act. We hold that because the Brewers' petition to review the Administrator's denial of repeal was filed within ninety days of that action we have jurisdiction under the 1976 Act to review that denial. Accordingly, it makes no difference whether the Guidelines would have been reviewable under the 1970 Act.

We add parenthetically that we are fortified in our conclusion that we have jurisdiction by the general presumption of reviewability of administrative action. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In view of this presumption we are reluctant to reach a conclusion that might insulate the Guidelines from any judicial review.

## II. THE MERITS

In their original "Petition for Repeal of the Beverage Container Guidelines" the Brewers challenged the Guidelines under both the 1970 Act and the 1976 Act. In this court the Brewers have limited their attack to a challenge of the validity of the Guidelines under the 1976 Act. Nevertheless, in order to determine whether the Beverage Container Guidelines are valid under the 1976 Act, we must first ascertain whether, when promulgated, they were within the authority delegated to EPA by the 1970 Act. If they fail to pass scrutiny under the 1970 Act, then, of course, they cannot be valid under the 1976 Act regardless of how much the authority of section 209(a) was expanded by the new section 1008. In other words, if the regulations were void from the beginning then no amendment to the underlying provision or enactment of a new statutory provision can infuse them with life unless they are specifically enacted as law.[3]

---

3. Whether it would be necessary to evaluate the validity of the Guidelines under the 1970 Act if the 1976 Act had contained a "savings clause", or if the Administrator had upgraded the authority for the Guidelines by publishing notice in the Federal Register are questions we need not address.

## A. THE 1970 ACT

Section 209(a) of the 1970 Act required EPA to:

> recommend to appropriate agencies and publish in the Federal Register guidelines for solid waste recovery, collection, separation and disposal systems . . ..

42 U.S.C. § 3254c (1970).

In addition to the Beverage Container Guidelines, EPA promulgated pursuant to this provision five other guidelines dealing with source separation of materials for recovery, residual separation of materials for recovery, storage and collection of remaining solid wastes, thermal processing of solid wastes, and finally land disposal of solid wastes. (Br. for Respondent at 7–9) The Guidelines were "recommended for adoption by State and local governments and private agencies" and were explicitly made mandatory for certain federal agencies pursuant to section 211 of the 1970 Act.

The Guidelines were published in proposed form in the Federal Register on November 13, 1975, 40 Fed.Reg. 52967. At that time public comment was received for a period of sixty days. The Agency received 5955 responses during the comment period from private citizens, industry representatives, including the Brewers, labor unions, environmental groups and other governmental agencies. Following the public comment period several changes were made to clarify and refine the proposed guidelines. On September 21, 1976 the guidelines were issued in final form.

■ Petitioners have not alleged, nor can we find, any infirmity in the Beverage Container Guidelines that would render them invalid in any respect under the 1970 Act. The Guidelines appear to fall squarely within the mandate of Congress to "publish . . . guidelines for solid waste recovery, collection, separation and disposal systems." Not only did EPA so conclude, but the Comptroller General of the United States, in response to an inquiry by Representative John D. Dingell, Chairman of the Subcommittee on Energy and Environment of the Committee on Small Business, also concluded that promulgation of the Guidelines was within the authority of section 209 of the 1970 Act. We find the reasoning of both EPA and the Comptroller General to be persuasive on this question. Accordingly, we conclude that the Beverage Container Guidelines were lawfully promulgated pursuant to section 209(a) of the 1970 Act and were in full legal force and effect at the time of the passage of the 1976 Amendments to the Solid Waste Disposal Act.

## B. THE 1976 ACT

With the Resource Conservation and Recovery Act of 1976, Congress replaced section 209 of the 1970 Act with section 1008, which provided in pertinent part:

> Within one year of [enactment of this section], and from time to time thereafter, the Administrator shall, in cooperation with appropriate Federal, State, municipal, and intermunicipal agencies, and in consultation with other interested persons, and after public hearings, develop and publish suggested guidelines for solid waste management. Such suggested guidelines shall—
>
> > (1) provide a technical and economic description of the level of performance that can be attained by various available solid waste management practices (including operating practices) which provide for the protection of public health and the environment;

42 U.S.C. § 6907.

Section 211 of the 1970 Act, which made the Guidelines mandatory for federal agencies, was reenacted verbatim as section 6004 of the 1976 Act. 42 U.S.C. § 6964.

The Brewers' principal argument here is that the Beverage Container Guidelines are inconsistent with the 1976 Amendments to the Solid Waste Disposal Act. That is, according to the Brewers, the Guidelines failed to survive the substitution of section

1008 of the 1976 Act for section 209 of the 1970 Act. The Brewers' contentions are a curious mixture of arguments that the Guidelines exceed the statutory authority of EPA and an argument that the Guidelines fall so far short of EPA's statutory mandate that they are invalid.

The Brewers first assert that the Guidelines exceed EPA's statutory authority because (1) the beverage containers are not "solid waste" until discarded and hence regulations applying to the distribution of beverages before the containers are disposed of are not authorized; (2) the legislative history of the 1976 Act expresses the intent of Congress that beverage container regulatory programs not be implemented by EPA; and (3) the 1976 Act impermissibly regulates private commercial operations.

In addition to their assertions that the Guidelines go too far the Brewers contend that the Beverage Container Guidelines are invalid because they totally fail to fulfill the mandate of section 1008. This challenge is premised on the following contentions: (1) the Guidelines are directed solely to federal facilities; (2) the Guidelines do not contain the statutorily required "technical and economic" information; (3) the Guidelines constitute a prescriptive mandate rather than an alternative solid waste management technique; and finally (4) the Guidelines do not provide standards by which to measure compliance by states for purposes of federal grant awards under sections 4008 and 8006 of the 1976 Act.

■ In attempting to sort out this admixture of arguments,[4] we must consider at the outset the significance of the provision in section 1008 that requires the Administrator to publish suggested guidelines "[w]ithin one year of [enactment of this section]." 42 U.S.C. § 6907(a). This provision indicates the intent of Congress to give the Administrator at least a one-year period within which to comply with the require-

ments of section 1008. Petitioners, however, filed their petition to the Administrator on February 7, 1977, and their petition for review in this court on September 26, 1977, both prior to the expiration of this one-year period. Thus we must first consider whether in view of the one-year period for compliance by the Administrator with section 1008, petitioner's challenge is premature.

■ The Supreme Court has concisely explained that the rationale of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories, supra,* 387 U.S. at 148–49, 87 S.Ct. at 1515. The appropriate inquiry for resolving issues of ripeness consists of an evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." 387 U.S. at 149, 87 S.Ct. at 1515. As noted, the Brewers challenge the Guidelines both on the ground that they exceed statutory authority, and that they fail to satisfy the statutory mandate. The application of this ripeness inquiry to these two types of challenges, under these circumstances, leads to two different results.

■ We think the contention that the Guidelines exceed the statutory grant of power is presently fit for judicial review. The record reveals that the Administrator has made a final determination on the merits, that the Guidelines do not exceed the statutory grant of authority to EPA. We see no reason why we should not review that decision. The mere passing of a period of time cannot, of course, expand the affirmative grant of power by the legislature

---

4. Petitioners also suggest that the original promulgation of the Guidelines did not satisfy the public participation requirements of section 7004(b) of the 1976 Act. We think a sixty-day comment period and EPA's consideration of the resulting 5955 comments satisfies the require-

ment that "[p]ublic participation in the development . . . of any . . . guideline . . . . shall be provided for, encouraged and assisted by the Administrator . . . ." 42 U.S.C. § 6974(b).

to EPA. If the Guidelines exceeded this power at the moment section 1008 became effective, they would likewise exceed this power at the end of a year.

■ Petitioner's argument that the Guidelines fall so far short of the statutory mandate as to require repeal, however, presents a different problem. We think the congressional grant of a one-year period for compliance evidences a recognition by Congress that complex environmental problems are not subject to instantaneous resolution. The formulation of "guidelines" requires consideration of extensive public commentary, distillation of complex statistical data, and considered weighing by decisionmakers of various political and economic factors before completion of the final product. Whether EPA, as alleged by the Brewers, has an abysmally record of meeting deadlines in the past, or whether EPA in fact had complied with the mandate of section 1008 at the expiration of the one-year period are not decisive questions. The point is that the legislature gave the Administrator one year to comply with its mandate. The Administrator tells us that the rulemaking process on at least two additional guidelines has begun. (Br. for Respondent at 13, 28–29) Under these circumstances we think the question of whether the Agency has fully satisfied the mandate of the statute is not fit for judicial review at this time, when the Agency, still well within the one-year period granted by statute, is deeply involved in the process of formulating rules designed to carry out the congressional mandate. The Agency might properly take one step at a time. Cf. *Williamson v. Lee Optical Co.,* 348 U.S. 483, 489, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Katzenbach v. Morgan,* 384 U.S. 641, 657, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966). Thus only if petitioner is apt to suffer undue hardship from a decision not to review the issue presented, and only if this potential hardship outweighs our desire to avoid premature entanglement in administrative decision-making should we review this second challenge by the Brewers.

We are unable to see, from the record presented, how the Brewers will be unfairly prejudiced by our refusal to consider their second contention at this time. Our decision in large part rests on our conclusion that, regardless of the merits of the Brewers' challenge, it has requested an inappropriate form of relief. It is indeed a novel approach to request repeal of a regulation because it only partially fulfills a statutory requirement. We think it clear that under normal circumstances a party seeking to force full compliance with a statutory requirement by an agency should seek as a remedy an order to the agency to comply more completely with the statutory mandate. For example, in *Association of American Railroads v. Costle,* 183 U.S.App.D.C. 362, 562 F.2d 1310 (1977), petitioners made similar challenges that EPA rules failed to fulfill the statutory mandate. The court there, however, ordered as the appropriate relief the promulgation of additional standards. While there may be unique circumstances where some actual harm caused by partial compliance with a statutory mandate might warrant abrogation of the part instead of an order to complete the whole, *see, e. g., National Resources Defense Council v. Train,* 396 F.Supp. 1386 (D.D.C.1975), that is not the case here. In short it is doubtful whether the relief requested by petitioner is the appropriate relief under the circumstances.

Thus, even if petitioners were to be successful on their second challenge, at most EPA would be ordered to comply more fully with the statute by promulgating a wider variety of guidelines. Under these circumstances, waiting for a one-year period would produce no undue hardship for petitioners. Accordingly, we hold that the Brewers' complaint that the Guidelines do not fully satisfy the mandate of section 1008 must be rejected on the ground that it is premature.

■ It remains to consider the Brewers' challenge that the Guidelines are in excess of the statutory authority granted to EPA. The Brewers' first contention, that beverage containers are not "solid waste" until discarded, and hence are not properly a subject of regulation under the Act, flies

squarely in the face of the explicit definition in the statute. Section 1008(a) directs EPA to publish "suggested guidelines for solid waste management", which, as defined in section 1004(30), expressly includes "planning or management respecting resource recovery and resource conservation", 42 U.S.C. § 6903(30), "reduction of the amounts of solid waste that are generated" and "utilization of recovered resources." 42 U.S.C. § 6903(21). We think the Beverage Container Guidelines clearly are designed to achieve these ends, and unless, as the Brewers next contend, this interpretation is clearly refuted by the legislative history of the 1976 Act, the guidelines must fall within the purview of section 1008.

 The Brewers attempt to support their interpretation of the statute by excerpts from the legislative history of the 1976 Act indicating (1) that the bill was not intended to interfere with decisions as to the choice of materials for, or the design of products or product packaging, and (2) that the bill was not intended to authorize EPA to prescribe a nationwide system requiring deposits on beverage containers at the time of their sale. Specifically, the Brewers rely on the Senate Committee report:

> The Committee recognizes that there are many unanswered questions about alternatives to reduce the volume of solid waste. Some alternatives look toward the initial phases of the manufacturing process—to materials used and product design. Attempts to regulate industrial and commercial operations have broad implications. The bill does not establish any Federal regulatory authority with respect to decisions in the manufacturing process.

S.Rep. No. 94–988, 94th Cong., 2d Sess. 5 (1976).

The House Report similarly explains the intended limitations on the scope of EPA authority to interfere with fundamental decisions, affecting the manufacturing process:

> The Committee is aware that much more investigation is required into the development of resource conservation alternatives and the assessment of the impacts of using such alternatives. Some alternatives that EPA could investigate include means to reduce waste generation through the redesign of products and product packaging and use in the manufacturing process. The bill does not establish any Federal regulatory authority with respect to requirements in the manufacturing process.

H.Rep. No. 94–1491, 94th Cong., 2d Sess. 36 (1976), U.S.Code Cong. & Admin.News 1976, pp. 6238, 6274.

The Brewers' reliance on these excerpts from the legislative history is misplaced. Compliance with the Guidelines requires no change of product or container design or of product or container materials. Rather compliance requires only that manufacturers mark the containers as returnable. We fail to discern from the record any support for the suggestion that marking containers requires interference with decisions as to product or package design or materials.

The Brewers also rely upon the following statement of Chairman Randolph of the Senate Committee on Public Works regarding resources conservation:

> In addressing the question of resource conservation, the members of the Committee on Public Works deliberately avoided the issues raised by proposals which would prohibit the use of certain types of containers or require deposits associated with their sale. No provision in this bill is directed specifically at this subject. We did not attempt to make judgments as to whether the various beverage container proposals should or should not be adopted. We believe that this type of product regulation is a matter to be resolved at the State and local level, rather than by the federal government.

122 Cong.Rec. 11070 (daily ed. June 30, 1976).

Chairman Randolph's statement, however, cannot be read as broadly as the Brewers desire. The statement no doubt supports the proposition that the bill is not intended to grant authority to EPA to im-

plement a mandatory nationwide beverage container program. But the statement also indicates that "this type of product regulation is a matter to be resolved at the State and local level . . ." And that is exactly the approach taken by EPA: the agency has promulgated guidelines that may or may not be adopted at the state and local level. That the Guidelines are mandatory for certain federal agencies is a result of a specific and separate statutory provision. Chairman Randolph's broad, general statement cannot fairly be read to negate the requirement of section 6004 that certain federal agencies shall comply with the Beverage Container Guidelines. Furthermore, that at least some legislators were aware of the existence of the Guidelines during the debate over the 1976 Act also cautions against the Brewers' reliance on Chairman Randolph's statement. Accordingly, we conclude that nothing in the legislative history mandates a reading of the 1976 Act at odds with that given by EPA.

Finally, we address the Brewers' contentions that the 1976 Act impermissibly regulates private commercial operations. It is settled that the federal government may exact, from those with whom it does business, compliance with standards or requirements different from those found in the marketplace generally. *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); *Contractors Association of Eastern Pennsylvania v. Secy. of Labor*, 442 F.2d 159 (3d Cir.), *cert. denied*, 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971). The Guidelines, as applied to certain federal agencies, do not attempt to impose on commercial distributors any duty to do business with the federal government; they merely require that those who choose to do business comply with certain requirements. We do not dispute that these are not requirements normally associated with the process of beverage distribution, nor that they may be to some extent onerous. Despite any burden placed on commercial operations by the Guidelines, they are incidental to voluntary participation in business relations with the federal government and accordingly are not unlawful regulation of private commercial operations.

Accordingly, we conclude that promulgation of the Beverage Container Guidelines was a valid exercise of the power granted to EPA by section 1008 of the 1976 Act, and we thus affirm the Administrator's denial of the Brewers' Petition for Repeal of the Beverage Container Guidelines.

*So ordered.*